Frank PENUELAS, Plaintiff,

v.

Rudolph M. MORENO, Lawrence Cook, Joseph Adams, R. R. Richardson, Raymond Stedry and Arthur Ramirez, and Local 89, Int'l Hodcarriers, Bldg. & Common Laborers Union of America, Defendants.

No. 2564–SDC.

United States District Court
S. D. California, S. D.
Sept. 14, 1961.

John Porter, San Diego, Cal., for plaintiff.

Walter Wencke, Robert G. Carlson, B. J. Kuykendall, San Diego, Cal., for defendants.

JAMES M. CARTER, District Judge.

The above entitled cause came before the Court on the Defendants' Motion for Dismissal and by virtue of the Affidavits of John L. Miller and Willie Sherman, was treated as a Motion for Summary Judgment.

Walter Wencke appeared on behalf of the Defendants and John Porter appeared on behalf of Plaintiff.

The complaint purports to base jurisdiction upon Sec. 501(b) of the Labor-Management Reporting and Disclosure Act of 1959, Public Law 86–257; 73 Stat. 519 et seq., 29 U.S.C.A. §§ 401–531, hereafter referred to as the LMRDA or the Act. However, the matters alleged in the complaint concern issues that would pertain to Title I of the Act, Sections 101–105 (Bill of Rights of Members of Labor Organizations); and also issues involving Title IV of the Act, Sections 401–404 (Elections); as well as Title V, Section 501(a) (b) (Safeguards for Labor Organizations, Financial Responsibility of Officers of Labor Organizations). Different procedural requirements have been set up under the Act for proceedings under Titles I, IV and V. It is necessary therefore to ascertain whether the matters complained of come within one particular title or another.

*The Court finds:*

I. Hod Carriers Building and Common Laborers Local No. 89 is a labor organization chartered and affiliated with International Hod Carriers Building and' Common Laborers Union of America, a national labor organization. At all times since June 18, 1960, Plaintiff Frank Penuelas was and now is a member of said Local 89, International Hodcarriers, Bldg. and Common Laborers Union of America.

II. The Constitution of said Union provides that every member shall exhaust all the remedies available to him within the International Union and its subordinate bodies before resorting to any Court in law or in equity.

III. Plaintiff has instituted no proceedings with the Union to protest the vote of the Executive Board on July 9 and July 11, 1960, to remodel the Union Hall and to employ a specifically named contractor.

IV. Plaintiff has failed to institute proceedings to protest the action of the Executive Board of July 9, 1960, to authorize the use of Union funds for the purpose of paying three unsuccessful candidates for office at the June elections of said Local for their time spent in attending a meeting on June 29, 1960, for a recount of votes cast at such election.

V. Plaintiff has failed to institute proceedings within the Local Union to protest the action of the Executive Board on July 9, 1960, authorizing the Secretary-Treasurer to pay the Sergeants at Arms for services at a general membership meeting on July 8, 1960.

VI. Plaintiff has neither instituted proceedings within the Union nor complained to the Secretary of Labor relative to the action of the Executive Board on July 11, 1960, authorizing President Rudolph Moreno of the Union to appoint delegates to the Building Trades Convention to be held in Long Beach, California, July 27 to July 29, 1960, and to make payments to the delegates so appointed.

VII. Plaintiff has neither instituted proceedings within the Union nor complained to the Secretary of Labor relative to the nomination of delegates to the District Council of Laborers on July 8,

1960, without notice to members, whereat said delegates were nominated.

VIII. Plaintiff has neither instituted proceedings within the Union nor complained to the Secretary of Labor relative to the action of the Executive Board on August 8, 1960, in authorizing the President of the local Union to appoint delegates to the Annual convention of the California State Federation of Labor to be held in Sacramento on August 15 and thereafter.

IX. Plaintiff has neither instituted proceedings within the Union nor complained to the Secretary of Labor relative to the action of the Executive Board on September 14, 1960, authorizing the President, Rudolph Moreno, to appoint three delegates to the California Labor Council on Political Education to attend the meeting of delegates in San Francisco on September 15, 1960, and to pay their expenses.

X. Plaintiff has at no time instituted proceedings within the Union to protest the expenditure of Union funds under emergency powers of the Executive Board.

XI. At all times since June 18, 1960, R. R. Richardson, Business Representative of Local 89, has been a Director of the Twenty-Second Agricultural District, having been appointed to said body by the Governor of the State of California. This agency is now and was an agency of the State of California. The Twenty-Second Agricultural District, as a state agency, cannot collectively bargain with Local 89.

XII. The Trustees of Local 89 have furnished the plaintiff with a copy of the report submitted by Local 89 to the Secretary of Labor pursuant to Sections 201 (b) and (c) of the Labor-Management Reporting and Disclosure Act of 1959.

XIII. Plaintiff has not instituted proceedings within the local Union to protest the refusal of the local Union to recognize plaintiff and others when they seek to speak, to protest the shutting off of debate on the floor of the meeting through the granting of immediate votes upon calls of the question, to protest any refusal to permit voting by division of the house, and to protest any determination of a call of the question upon a simple majority vote by ayes and nayes.

XIV. The Secretary of Labor has not initiated proceedings with this Court against defendants.

XV. At no time has demand been served by plaintiff either upon the Union or the officers or the Trustees of the Union, to institute suit.

XVI. Plaintiff has not shown good cause to this Court for the institution of suit.

The Court makes the following
Conclusions of Law

I. There are three pre-requisites for the bringing of an action under Sec. 501(b): *first*, the member suing in the federal court must *request* the union to take court action; *second*, the union or its governing board or officers must refuse or fail to sue, etc.; and *third*, a showing of good cause must be made.

II. As to the first two requirements, although the wording is not artful, the section clearly refers *to a failure or refusal to bring a court action* after a request has been made that the action be brought.

Four matters, each separated by the word "or" are mentioned after the words "refuse or fail,"

(1) to sue or

(2) recover damages, or

(3) secure an accounting or

(4) other appropriate relief.

(1) and (2) obviously refer to court action only. (4) "other appropriate relief" is a standard, well-known legal term referring to court action. (3) "secure an accounting" may be ambiguous. Read with (1) and (2) which it follows, it refers to court relief granting an accounting.

Certainly it was not the intent of Congress to require a demand be made for court action in several instances and not in another. We conclude that Section

501(b) refers to a demand for court action.

It follows that a *demand* must be made by plaintiff requiring that the union or its governing board or officers take court action to secure the relief referred to in (1), (2), (3) or (4) above.

III. As observed in Johnson v. San Diego Waiters & Bartenders Union, Local 500, D.C.Cal.1961, 190 F.Supp. 444, federal district courts are courts of *limited* jurisdiction. In holding that an alleged denial of a right arising under Title IV of the LMRDA did not confer jurisdiction on the federal courts, the court in Johnson observed:

> "The United States District Courts are creatures of statutes enacted in pursuance of the Constitution, and are courts of limited jurisdiction. They have no jurisdiction other than that conferred by acts of Congress within the limits defined by the Constitution." At page 447.

In support of this proposition, the court cited Kline v. Burke Construction Co., 1922, 260 U.S. 226, 233–234, 43 S.Ct. 79, 83, 67 L.Ed. 226, in which the Supreme Court declared that, other than itself, every federal court derived its authority wholly from Congress. "And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part * * *." The Supreme Court has maintained this position. In Healy v. Ratta, 1933, 292 U.S. 263, at page 270, 54 S.Ct. 700, at page 703, 78 L.Ed. 1248, the Court invoked Kline in concluding that Congress has followed a policy of narrowing federal court jurisdiction, thus requiring strict construction of any statute in which such jurisdiction was allegedly conferred.

■ Section 501 of the LMRDA is such a statute. Section 501(a) declares that union officers and representatives have fiduciary responsibilities; a procedure for enforcing these obligations is set forth in Section 501(b). The section must be strictly construed.

IV. In addition to the requirements heretofore discussed the plaintiff in an action under Section 501(b) in the Federal court must show "good cause". There is nothing in the section which defines "good cause" nor can the section be read as meaning that the requirement of good cause is satisfied merely by the demand for court action referred to above. If this is what Congress had intended, it could have omitted the reference to "good cause". "Good cause" must therefore mean something in addition to the demand and the refusal referred to above.

Congress desired to protect the rights of members in labor unions; Congress without question was familiar with the great bulk of civil litigation in the courts of the States and of the United States. It is unbelievable that Congress intended that all a Union member had to do before filing action under Section 501(b) was to make a demand upon his union for court action in some matter concerning monies or the property of the union, such as is described in Section 501(a); and then upon the mere failure or refusal of the union to sue, that such member would be immediately entitled to bring an action in the State of Federal court for relief. It was undoubtedly this thinking which motivated insertion of the words "for good cause shown."

Congress was also familiar with the great body of State law requiring that union members exhaust their remedies within the union prior to resorting to the courts.

The basic "right to sue" provision of the LMRDA is Section 101(a) (4). That section forbids any union to limit the rights of its members to sue the organization or its officers or to institute a proceeding against them before any administrative agency. The same protection is extended to the right of a union member to appear as a witness in any judicial, administrative, or legislative proceeding, to petition any legislature, and to communicate with any legislator. However, while affirming such general rights of the union member, Section 101(a) (4) also provides:

> "That any such member may be required to exhaust reasonable

hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *."

Clearly, the conclusion that the exhaustion of remedies provision of Section 101(a) (4) is a prerequisite to a federal jurisdiction under Section 501(b) is necessary without even invoking the Court's observation in Healy v. Ratta (supra) that a "strict construction" is required of any statute allegedly conferring federal jurisdiction.

In Transcontinental & Western Air, Inc. v. Koppal, 1952, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, the court itself embraced the exhaustion rule, dismissing for want of jurisdiction upon finding that plaintiff had failed to utilize the administrative remedies provided in the employment contract upon which he sued for wrongful discharge.

Evidenced Congressional intent supports this application. One labor authority has observed that the exhaustion requirement of Section 101(a) (4) may well be a common law rule, which Congress certainly did not intend to abrogate. In support of this position, he cites the following remarks made by then Senator Kennedy, in 105 Cong.Rec. 16414 (daily Ed. Sept. 3, 1959), regarding the section:

"(It was not) the purpose of the law to eliminate existing grievance procedures established by union constitutions for redress of alleged violation of their internal governing laws. Nor is it the intent or purpose of the provision to invalidate the considerable body of State and Federal court decisions of many years standing which require, or do not require, the exhaustion of internal remedies prior to court intervention depending on the reasonableness of such requirements in terms of the facts and circumstances of a particular case. So long as the union member is not prevented by his union

from resorting to the courts, the intent and purpose of the 'right to sue' provision is fulfilled, and any requirements which the court may then impose in terms of pursuing reasonable remedies within the organization to redress violation of his union constitutional rights will not conflict with the statute." (Smith, "The Labor-Management Reporting and Disclosure Act of 1959," 46 Va. L.Rev. 195, 207 (1960).

Additional evidence of legislative intent appears in the Senate Report on the LMRDA, of which the following is representative:

"In acting on this bill the committee followed three principles:

"1. The committee recognized the desirability of minimum interference by Government in the internal affairs of any private organization. Trade unions have made a commendable effort to correct internal abuses; hence the committee believes that only essential standards should be imposed by legislation. Moreover, in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agent." (2 United States Cong. & Admin. News 2323 (1959).

A pertinent rule of construction was supplied by the court in Hughes v. Local No. 11 of Int'l Ass'n of Bridge, etc., D.C. N.J.1960, 183 F.Supp. 552. In refusing a broad interpretation of the union member's right to sue under Section 101, the court stated:

"In the construction of the Labor-Management Reporting and Disclosure Act of 1959, any limitation of existing prerogatives of a labor organization as to internal affairs must be spelled out and not left to either merely possible or whimsical inferences." At page 554.

In the cases which have so far been decided, it is evident that the weight of

authority holds that there is no federal jurisdiction in suits by union members on rights protected by Section 101(a) (4) where union remedies have not been exhausted. See, e. g., Smith v. General Truck Drivers, etc., D.C.Cal.1960, 181 F.Supp. 14; Allen v. Armored Car Chauffeurs, etc., D.C.N.J.1960, 185 F. Supp. 492; Rizzo v. Ammond, D.C.N.J. 1960, 182 F.Supp. 456. In Smith, the Court interpreted Section 101(a) (4) as follows:

"This clause is *unconditional* * * *

"(We) decline to read exceptions into the specific language of the federal statute under discussion, which makes exhaustion of the intra-union remedy provided by the union's constitution or by-laws a condition precedent to the institution of court action. To do so would do violence to the fundamental concept that where exhaustion of administrative remedies is a condition precedent to the institution of a civil action, the requirement must be complied with strictly and become final. This is not the situation here. (Emphasis in original.)

"If one were permitted to dispense with a necessary administrative step before invoking the jurisdiction of federal courts, *which are courts of limited jurisdiction,* upon the mere assertion that the tribunal was biased or had ruled or would rule unfavorably and had no power to act, every such requirement could be disregarded at will. The contention is to fantastic to entertain in view of the specific language of the statute. And it has been rejected by the courts whenever made." 181 F.Supp. at pages 18–19. (Emphasis added.)

The federal decisions reflect great hesitancy to depart from the exhaustion prerequisite to jurisdiction, even in the most compelling circumstances. Thus, in Detroy v. American Guild of Variety Artists, 2 Cir., 1961, 286 F.2d 75, at pages 77–78,

where the court granted temporary injunctive relief against plaintiff's union on traditional equitable principles under Section 102 of the Act, it nevertheless observed:

"Absent a clear directive by Congress, the policy formulated over a course of time by courts reluctant to interfere in the internal affairs of private organizations should not be superseded. We hold, therefore, that the provision in § 101(a) (4) applies, as well, to suits brought in the federal courts for violations of the rights secured by § 101".

The court also considered the policies underlying the exhaustion provision:

"The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures. (Citation.) Other policies, as well, underlie the exhaustion rule. The possibility that corrective action within the union will render a member's complaint moot suggests that, in the interest of conserving judicial resources, no court step in before the union is given its opportunity. Moreover, courts may find valuable the assistance provided by prior consideration of the issues by appellate union tribunals. (Citation.) Congress has provided a safeguard against abuse by a union of the freedom thus granted it by not requiring exhaustion of union remedies if the procedures will exceed four months in duration." At page 79.

It is apparent that all policies favoring the exhaustion prerequisite to Section 101 actions apply with equal force to suits instituted pursuant to Section 501 (b). Nor is there any language in the latter section which would conflict with the application of the federal exhaustion-of-remedies doctrine. In Highway Truck Drivers & Helpers Local 107 v. Cohen, D.C.Pa.1960, 182 F.Supp. 608, at page

617, the court observes that Section 501(b) is subject to broad interpretation:

"This section, quoted earlier, attempts to define in the broadest terms possible the duty which the new federal law imposes upon a union official. Congress made no attempt to 'codify' the law in this area. It appears evident to us that they intended the federal courts to fashion a new federal labor law in this area, in much the same way that the federal courts have fashioned a new substantive law of collective bargaining contracts under Section 301(a) of the Taft-Hartley Act, 29 U.S. C.A. § 185(a)."

In formulating such federal law, the compelling policies underlying the requirement of exhaustion of internal remedies must be considered in the interpretation of Section 501(b). In an exhaustive analysis of the LMRDA (Aaron, "The Labor-Management Reporting and Disclosure Act of 1959." 73 Harv.L.Rev. 851, 869 (1960), one authority declared of the exhaustion requirement:

"The extent, if any, to which a union member's right to sue his organization or its officers should be curtailed has always been a matter of controversy. Few would deny him the right under all circumstances; but most would agree that 'freedom of litigation . . . is hardly so essential a part of the democratic process that the courts should be asked to strike down all hindrances to its pursuit.' (Citation.) Section 101(a) (4) thus wisely includes a proviso requiring a union member to exhaust his internal union remedies before seeking relief in court or before an administrative body. *Democratic processes atrophy when they are not exercised; union members will have no interest in improving their organization's internal adjustment procedures if they never are required to use them.*" (Emphasis added.)

Does the "good cause" prerequisite to suit under Section 501(b) preclude federal jurisdiction in a case where the plaintiff has failed to exhaust his union remedies?

Section 501(b) requires that, as a condition precedent to an action under Section 501(a), the plaintiff must obtain permission from the court to sue—"upon verified application and for good cause shown." The courts which have so far interpreted this provision have noted that "good cause" is nowhere defined by Congress; generally, it has been concluded that "good cause" rests in the sound discretion of the court. Highway Truck Drivers & Helpers Local 107 v. Cohen, D.C.Pa.1960, 182 F.Supp. 608; Executive Bd. Local Union No. 28, I. B. E. W. v. I. B. E. W., D.C.Md.1960, 184 F.Supp. 649.

Quite apart from the issue of the application of Section 101(a) (4), the "good cause" proviso of Section 501(b) invites reference to the exhaustion-of-remedies requirement as a judicial doctrine of general application:

"The rule is one of judicial administration. It applies not only to suits involving the internal affairs of all forms of voluntary association but also to actions upon ordinary contracts, including collective bargaining agreements. In an exaggerated form the exhaustion-of-remedies doctrine may deny legal relief to a plaintiff whose internal remedy is vain, too slow, or too expensive, but when wisely administered, the doctrine strengthens the independence and self-government of private associations." (Cox, "Law and the National Labor Policy," p. 104, Industrial Relations Monograph No. 5, University of California.)

█ It seems apparent that "good cause" within the purview of Section 501(b) has not been shown where the plaintiff has failed to avail himself of his internal remedies, since to hold otherwise is to confound the expressed policies of both Congress and the Courts, as outlined supra.

In applying Section 501 of the LMRDA, substantive federal law can be drawn

from state law, where the exhaustion requirement is well established.

In the Highway Truck Drivers & Helpers decision (supra, 182 F.Supp. 608), the court noted that Section 501 may place the same obligation on the federal courts to define federal substantive law as did Section 301 of the Taft-Hartley Act, as interpreted by Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Further, the court noted that here, as in Lincoln Mills, the federal courts will rely heavily on state law, using that law where it does not conflict with national labor policy.

The exhaustion requirement, declared in our national labor policy in Section 101(a) (4), inter alia, may well be a common law rule. See Smith, "The Labor-Management Reporting and Disclosure Act of 1959." 46 Va.L.Rev. 195, 207 (1960). It is certainly part of the labor law of California, as was noted by the Court in Detroy, 286 F.2d 75, supra, and Smith, 181 F.Supp. 14, supra.

The principal adviser to then Senator Kennedy in drafting the Kennedy bill which was a primary antecedent of the LMRDA, has urged that Congress intended no limitation on the exhaustion requirement as a *judicial* doctrine. Cox, "Law and the National Labor Policy," pp. 104–5, cited supra. He urges that this doctrine applies in the state courts no less than in federal forums, and that "it seems unlikely that Congress would so lightly sweep aside state rules of judicial administration."

Has plaintiff failed to show "good cause" for leave to sue under Section 501 (b) of the LMRDA since he has not availed himself of internal union remedies?

As has been noted, the courts which have so far interpreted Section 501 have concluded generally that it is addressed to the sound discretion of the court to determine whether "good cause" justifying the court's permission to sue has been shown in each case.

One factor in determining whether good cause has been shown is the exhaustion requirement. As observed by the court in Smith, 181 F.Supp. 14, at page 19, supra, and in cases too numerous for citation, the court will not interfere in internal union affairs except in rare instances:

"The requirement in the statute before us (Section 101) conforms to the general pattern of other statutes which require the exhaustion of certain administrative remedies before courts are resorted to. (Citation.) The fact that the statute did not itself establish an intra-union procedure does not alter the situation. By allowing the unions to do so and recognizing existing union procedures to that effect, the statute merely followed two principles which the courts have adhered to in dealing with labor unions. The first of these is that courts will not interfere with the internal affairs of unions, except in rare cases of fraud or illegality. (Citation.) The other principle is that when the unions themselves, even without statutory permissive legislation, have set up tribunals for the determination of controversies between members and the locals, every procedural right before such tribunals *must* be exercised before the aid of the courts is invoked." (Emphasis in original.)

It seems apparent that the strict interpretation of the exhaustion requirement reflected above follows from the Congressionally declared policy of insuring union democracy. To allow the democratic processes, in the words of Professor Aaron, to atrophy by avoidance of internal union procedures, would controvert the declared policy of the LMRDA legislation. Of Section 501(b), he observes:

"It may be that the incentive for an individual union member to sue his officers is made overly attractive by the possibility that he can recover attorney's fees and expenses, yet without that chance he is likely to be discouraged at the outset. The further danger that frivolous and har-

assing suits will be brought against union officers is largely met by requiring the court's prior permission to sue." (Aaron, "The Labor-Management Reporting and Disclosure Act of 1959," 73 Harv.L.Rev. 851, 895 (1960).

To obviate that danger, and to insure the continuance of the prevailing policies under Section 101(a) (4), a motion to dismiss or a summary judgment should be granted where the putative plaintiff has not availed himself of his internal union remedies.

■ The showing of *good cause* may be made ex parte. By hornbook law any order made ex parte may be set aside either ex parte or on motion.

The court concludes that no good cause has been shown and that the ex parte order should not have been issued. After our experience with this case, we think the better practice will be to require an adversary proceeding before permitting an action under Sec. 501(b) to be filed.

■ V. That insofar as matters of which plaintiff complains pertain to rights and privileges within such organization or rights to vote at elections or to participate in deliberations and voting, such matters come within Title I, Sections 101(a) (1)–(5).

Section 101(a) (4) expressly requires that the member "be required to exhaust reasonable hearing procedures * * * within such organization, before instituting legal or administrative proceedings * * *."

The matters set forth in Findings III, IV and V and XIII, come within the ambit of Title I (Sec. 101) of the Act and plaintiff has not exhausted his remedies within its union.

VI. That insofar as the matters complained of by the plaintiff concern elections of officers, the matter is covered by Title IV, Section 401(a)–(h). The title also contains Section 402 which provides that after a member "has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body * * * or who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation", he may file a complaint with the Secretary of Labor. The Secretary of Labor alone may bring court action.

The matters set forth in Findings VI, VII, VIII and IX come within the ambit of Title IV (Sections 401, 402 and 403) of the Act and only the Secretary of Labor may bring the action.

VII. As to matters coming within Title V, Section 501(b) provides "when any officer * * * of any labor organization is alleged to have violated the duties declared in subdivision (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer * * * in any district court of the United States * * *. No such proceeding shall be brought except upon leave of the court obtained upon verified application and good cause shown, which application may be made ex parte."

The matters set forth in Findings X, XI, purport to come within Title V (Sec. 501(a) and (b) of the Act but plaintiff has not satisfied the requirements of the Act in that no demand for court action has been made, plaintiff's remedies within the union have not been exhausted and good cause has not been shown for bringing the action.

VIII. This Court has no jurisdiction under the facts found.

XI. The Defendants are entitled to Summary Judgment.

Therefore, It Is Ordered, Adjudged and Decreed that Defendants have Summary Judgment and that the action be dismissed without prejudice. Plaintiff may, only for good cause, and upon exhaustion of remedies within the Union, ask leave of this Court to institute suit against Defendants for the same subject matter.