Gervase J. PURCELL, Jr., Gregory Horan, John R. Keenan, Samuel J. Rosato, James J. Higgins, and Ronald McGuigan, on behalf of Local 169, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization

v.

Frank KEANE, Archie McGowan, Frank Burdy, Bernard Marcus, Andrew O'Hara, William Maloney, and Fireman's Fund American Insurance Company.

Civ. A. No. 41497.

United States District Court
E. D. Pennsylvania.

Nov. 20, 1967.

Edward B. Bergman, Philadelphia, Pa., for plaintiffs.

Bernard N. Katz, Edward Morris, and Paul J. Donnelly, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

The plaintiffs, individual members of Warehouse Employees Local 169, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, have brought this action on behalf of their union under the provisions of section 501 of the Labor Management Reporting Act of 1959 [hereinafter called the "Act"].

Both the individual defendants and Fireman's Fund American Insurance Company have filed motions to dismiss. Section 501 provides:

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

I. Motion to Dismiss by individual defendants.

The individual defendants are and were officers of the union, and the complaint seeks to require these persons to reimburse the union for union funds which they allegedly misappropriated.

Section 501(b) requires leave of the court to institute the action. Leave to sue is conditioned upon (a) the member plaintiff *requesting* the union to "sue or recover damages or secure an accounting or other appropriate relief"; (b) the union or its governing board or officers *refusing* or *failing* to sue, and (c) a showing of good cause. 29 U.S.C.A. § 501(b).

It is defendants' contention that leave to sue was improperly granted because there was no refusal or failure to sue within a reasonable time as provided for in the statute. In a case relied upon by defendants for support of their second argument, which will be discussed below, Penuelas v. Moreno, 198 F.Supp. 441 (S.D.Calif.1961), the court decided that the first two requirements of section 501(b) (a and b as stated above) clearly refer to a failure or refusal to bring a *court action* within a reasonable time after a request has been made. Defendants argue that they have fulfilled their duty under the statute by appointing a subcommittee to inquire into the merits of plaintiffs' demand. The subcommittee

was to report to the governing board who would then determine whether or not to take any court action. They conclude that in plaintiffs' securing leave to sue forty days after the request to the union was made, they were not given a reasonable time in which to conduct the subcommittee inquiry and make a final determination as to further action.

As stated, section 501(b) permits a union member to come into federal court when the union fails or refuses to take court action. The union must be afforded a reasonable time in which to act; but it *must* eventually within that reasonable time period take court action. In the present case it was highly speculative whether the union would ever take court action. Indeed the Board was to determine whether *or not* to take the officers into court. Furthermore even if such a procedure was permissible, the subcommittee appointed here was composed of the very same individuals charged with misappropriation of the union funds. Such a committee could never be held to discharge the union of its duty to act within a reasonable time under the statute.

Also significant is the fact that to date, a period of over a year, the subcommittee has made no report to the Board. Circuit Judge Francis L. Van Dusen, in an excellent opinion, considered a similar case earlier this month. In that case a Motion to Dismiss was heard by Judge Van Dusen about one year after the union was asked to take action on plaintiffs' grievances. The reasonable time period in which a union must act was held to have expired due to the fact that no showing of any remedial action or of a suit by the union was made by the defendants as of the time of the hearing. Giordani v. Hoffman, E.D.Pa. November 3, 1967, 277 F.Supp. 722. Similarly, in the case at bar, a year has gone by since plaintiffs' demands have been made. The record is devoid of any union action on the grievances.

The crucial question presented by this motion to dismiss is: must a union member exhaust his internal union remedies before filing a suit under section 501(b)?

The federal courts have differed in answering this question. Indeed, the Ninth Circuit Court of Appeals found that "no other intraorganizational remedies" other than the request specified in the statute, to wit, that the plaintiff must request that the union sue, recover damages, or secure an accounting, need be pursued. Horner v. Ferron, 362 F.2d 224, 231 (9th Cir. 1966). Yet, only five years earlier a California district court had held that failure to exhaust intra-union remedies would preclude plaintiff from suing under 501(b). Penuelas v. Moreno, 198 F.Supp. 441 (S.D.Calif. 1961). After dealing with the first two prerequisites for the bringing of an action under 501(b) that are discussed in this Court's determination of the first issue above, i. e. *first*, the member suing must *request* the union to take some form of the statutorily prescribed action, and *second* the union or its governing board or officers must refuse to take this action, the court in *Penuelas* went on to discuss at length the necessity for a showing of good cause.[1] In ruling that "good cause" was equivalent to exhausting internal union remedies, the California district court concluded that the "basic right to sue" provision of the Act (Section 101(a) (4)) forbidding any union to limit the rights of its members to sue the organization or its officers embodies an express "exhaustion of union remedies" clause. It further concluded that the principle should pervade the entire Act whenever the question of suit arises.

Of course, the negative implication of 101(a) (4)'s mandate is that where Congress intended prior exhaustion to be a prerequisite under other sections of the act, it said so specifically. Accordingly,

---

1. 29 U.S.C.A. § 501(b) provides in part: No such proceeding shall be brought except upon leave of the court obtained upon verified application and *for good cause shown*, which application may be made ex parte. (Emphasis added).

it can be argued that Congress' silence in 501(b) should be interpreted to mean that exhaustion does not apply.

In reading the exhaustion of remedies requirement of 101(a) (4) into 501(b), *Penuelas* mistakenly emphasized the legislative intent of the majority of the Senate committee which approved the bill.[2] It cited the committee's report on the bill for the proposition that "in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents." 2 United States Cong. & Admin. News, p. 2323 (1959). This bill did not become law. It did not contain a section 501(b). In fact, it glaringly omitted any provision regarding fiduciary responsibility of union officials.

■ This Court cannot follow the *Penuelas* interpretation of the policy of the Act. It is submitted that a better reading of the legislative intent of the Act focuses on the principle of recognition and protection of the basic rights of union members, perhaps even at the expense of union solidarity. It is this Court's finding that the clear intent of Congress in enacting section 501(b) was to weed out instances of corruption and breach of trust; to preserve the rights of individual members and to insure high standards of responsibility on the part of, at that time, powerful and sometimes detached and autocratic union officers.

■ The argument was mentioned earlier that the "exhaustion" clause of section 101(a) (4) was meant to apply to 501(b). We find the opposite to be true. Because of section 501(b)'s silence as to exhaustion of internal union remedies and because of the fact that other sections do mention it and provide for it in their particular situations,[3] it must be inferred that Congress did not wish to set up an exhaustion of remedies prerequisite to suit under section 501(b). Significantly, even if found to apply to 501(b), it has been held by the Fourth Circuit Court of Appeals that the exhaustion of remedies is not a mandatory one; but rather it is discretionary with the court to determine whether pursuit of such remedies will be required. Simmons v. Avisco, Local 713, Textile Workers Union of America, 350 F.2d 1012 (4th Cir. 1965); Ryan v. International Brotherhood of Electrical Workers, 241 F.Supp. 489 (N.D.Ill.1965).

■ It is a prerequisite to suit here that a showing of "good cause" be made. According to *Penuelas* a union member has not made a showing of good cause where he has failed to avail himself of internal union remedies prior to coming into court. With this, the court cannot agree. Herein lies a court's discretionary power. Exhaustion of remedies is not mandatory. A court within its discretion can find "good cause" absent a showing of exhaustion of internal remedies. And this is because an exhaustion of one's internal union remedies is not a prerequisite to a showing of good cause. This is not to say that a court will *never* consider whether internal union remedies have been exhausted by a plaintiff. A court *may* consider, among other factors, whether there has been an exhaustion of remedies, in determining whether good cause exists. All that is being held here is that a court does not *have to find exhaustion in order to find good cause.* Judge A. Leon Higginbotham, Jr., thus was properly permitted to find good cause albeit the absence of a showing of the exhaustion of the union's remedies. Leave to sue was properly granted.

Other allegations raised by the defendants in their motion to dismiss concern defects in the Complaint, to wit, that

2. Senate Report No. 187, April 14, 1959 [To accompany S. 1555]. Based on extended investigation by the McClellan Committee on Improper Activities in the Labor and Management Field.

3. Section 101(a) (4) of the Act [29 U.S.C.A. § 411(a) (4)] regarding right to sue under the Bill of Rights of Members of Labor Organizations and section 402(a) (2) of the Act [29 U.S.C.A. § 482(a) (2)] regarding election irregularities.

certain enumerated checks do not indicate any impropriety on the part of defendants; failure to join the president of the union as a party defendant; failure to name the union as a party defendant; and the request for a jury trial. They do not warrant dismissal of this action.

Federal Rule of Civil Procedure 8(a)(2) requires that the Complaint contain a "short and plain statement of the claim." This, plaintiffs have satisfied.

■ The question of indispensability of parties relates to plaintiffs' failure to join (a) the president and (b) the union as party defendants. Section 501(b) can be likened to the familiar situation in which a corporate shareholder brings a derivative suit in the corporation's behalf after the corporation has refused to proceed against directors who have made themselves personally liable for breach of duty. In a shareholder derivative action the corporation for whose benefit the action is brought is an "indispensable party", but an indispensable party *plaintiff*. The individual shareholder is allowed to act in protection of the corporation's interest because, due to the adversity of the directors, it is disabled from protecting itself. See Koster v. (American) Lumbermens Mutual Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Similarly in the 501(b) situation, the union is impotent to act on its own behalf. It must be named as a party plaintiff as was done in this case. However there is no authority that holds a corporation or a union is an indispensable party *defendant*.

■■ As to the union president, Mr. Hartsough, it is well-established that a party is indispensable when his "rights may be affected and that a court 'cannot proceed to a final decision of the cause' until he is made a party. Russell v. Clark's Executors, 7 Cranch 69, 98, 3 L.Ed. 271 (1812)." Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Cas. Co., 365 F.2d 802, 805 (3 Cir. 1966). The facts do not show that Mr. Hartsough had anything to do with the alleged improprieties of the named defendants. It is certainly not readily apparent how any adjudication of the case would affect the rights of the president here. He is thus not an indispensable party in this case.

■ Finally, while plaintiffs may have erroneously requested a jury trial, this does not warrant a dismissal of their cause of action.

For all the foregoing reasons, on all the points of law raised, defendants' motion to dismiss is hereby denied.

II. Motion to Dismiss by additional defendant, Fireman's Fund American Insurance Company.

■ In plaintiffs' action against defendant officers of the union as related above, Fireman's Fund American Insurance Company which had issued its fidelity bond to Local 169 has been joined as a party defendant. The question is whether this joinder is proper.

The bond is required under section 502 of the Act "to provide [for] protection against loss by reason of acts of fraud or dishonesty." 29 U.S.C.A. § 502. The bond applies generally to the officers of the union.

The bonding company argues that there is no statutory authority to join it as a defendant in a 501 action in which the bonded officers are the other defendants. In an opinion directly on point the United States District Court for Nebraska specifically ruled that a union member may join as a defendant the surety which has bonded the officer defendants in a 501 action pursuant to section 502 of the same Act. Robinson v. Weir, 277 F.Supp. 581 (D.Neb.1966). This Court agrees.

■ The second issue raised is whether the failure of plaintiffs to comply with the provisions of the bonds, particularly with respect to notice of loss, proof of loss, and time in which an action can be brought, constitutes grounds for dismissal.

The purpose of section 501(b) is to permit individual union members to proceed on behalf of their union when the

union officers who normally have this responsibility will not act. Section 502 must be read in light of section 501. In the typical 501 situation the union through its officers will not act against its errant officers because either the officers empowered to act are the ones charged or are at least close associates. If it is preposterous to expect them to sue themselves, it follows that it is equally unlikely to expect them to sue on a surety bond on which they defaulted. As to notice to the surety company where it is apparent in a 501 situation, as it is under the circumstances involved here, that the individual members plaintiff had no actual knowledge of the provisions of the surety contract, they will not be charged with the duty of giving notice to the surety company in accordance with the provisions of the insurance policy.

For the foregoing reasons, this Motion to Dismiss is hereby denied.