Andy DINKO, Individually and on behalf of the members of the National Maritime Union of America, Plaintiff-Appellant,

v.

Shannon J. WALL, as President of the National Maritime Union of America and Individually, et al., Defendants-Appellees.

No. 469, Docket 75–7502.

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1976.

Decided Feb. 13, 1976.

Melvin E. Rosenthal, New York City, for plaintiff-appellant.

Stanley B. Gruber and Abraham E. Freedman, New York City, for Wall, Curran, Barisic, Bocker, Martin, Miller, Rich and Freedman for defendants-appellees.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Andy Dinko, a member of the National Maritime Union of America, appeals from a judgment of the United States District Court for the Southern District of New York, Henry F. Werker, J., dismissing plaintiff's action, brought individually and on behalf of members of the Union against various past and present officers of the Union and Trustees of a current union pension plan and its predecessor. The complaint alleged that defendants had committed various breaches of fiduciary obligations imposed by the Labor-Management Reporting and Disclosure Act of 1959 (the Act), 29 U.S.C. § 501(a).[1] The district court held that plaintiff had not complied with the requirements of that Act, 29 U.S.C. § 501(b), that he first request the Union to sue on its own behalf and that he show good cause for the legal action. We reverse the first ruling and remand for further findings on the second.

## I  Facts

The relevant facts may be stated briefly. On December 17, 1974, plaintiff wrote two of the defendants, demanding that a vote on a recent proposed revision of a union pension plan be declared void. Plaintiff set forth the basis for his demand and claimed that the vote was illegal under both federal law and the union constitution. Plaintiff also demanded an accounting of union expenditures and benefits under the plan, an independent audit, and other measures to protect union members against alleged "continuous misappropriation" of union funds. Plaintiff's letter is reproduced in the margin.[2]

---

1. Section 501(a) provides:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, ánd to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

2.                    December 17, 1974

National Maritime Union of America
346 West 17th Street      Att: Mel Barisic
New York, N.Y.  10011      Secretary-Treasurer
                              of N.M.U.

Gentlemen:

Notice is hereby given that the regular November meeting of the Union, held on November 25, 1974, was conducted in an unconstitutional manner. Further notice is given that the vote at said meeting on the proposed revision of the National Maritime Union Officer's Pension Plan and its Trust Agreement, was invalid and unconstitutional.

The Constitution of the National Maritime Union provides that where there is a change of policy, membership approval is necessary.

The Constitution further provides that for the membership act, the change "shall be spread in *full* in the National Maritime Union Pilot . . . .".

The proposed revision was not spread in *full* but was merely set forth in the Pilot as a description. For the membership to have adequate notice, the proposed revision must be published in the Pilot in *full* in both English and Spanish.

In January 1975, in accordance with the unusual provisions of section 501(b) of the Act,[3] plaintiff sought the district court's permission to sue defendants on behalf of the Union. The application was ex parte as permitted by section 501(b). Judge Marvin E. Frankel, by order dated January 27, 1975, granted leave to proceed. After defendants served their answers, they took plaintiff's deposition and served written interrogatories. In May, plaintiff moved to disqualify the Union's counsel as attorney for these defendants and to enjoin the expenditure of union funds for their defense. See *Tucker v. Shaw*, 378 F.2d 304 (2d Cir. 1967). Relying on portions of plaintiff's deposition and other documents, defendants cross-moved to dismiss the complaint. By this time, the case had been assigned to Judge Werker. In August 1975, the judge granted defendants' motion in an unpublished memorandum opinion. The basis of the district court's decision was that plaintiff had not met two requirements of section 501(b): Plaintiff had failed to request that the Union "take court action" before bringing his suit, and he had not made "an adequate showing of 'good cause'." On appeal, plaintiff claims that the district court erred in both respects.

## II  *Demand to Sue*

Section 501(b), see note 3 supra, authorizes any union member to bring suit in a federal district court or state court against

Demand is hereby made that the vote on the proposed revision be declared void. In the event the proposal is again submitted to the membership it should be published at least three (3) months prior to the meeting at which it is voted. Publication should be in English and Spanish. The meeting shall be conducted pursuant to the Constitution, allowing members their right to speak on the motion.

At the meeting of November 25, 1974, the membership was not permitted to speak on the proposed revision; all in violation of the National Maritime Union Constitution.

I, Andy Dinko, N.M.U. book number S–51380, demanded several times from the Chairman of the Meeting to speak on this proposal but refused to be recognized by the Chairman and was ordered several times to sit down and shut up. This violates my guarantee of free speech, under the Landrum Griffin Act.

I demand a complete accounting of all Union expenditures involving the officers Staff Pension Plan and all benefits associated therewith. In addition I further demand a true and accurate accounting of all Union officers and staff, who are participating recipients in this plan; as well as monies expended or allocated for each individual; family benefits and health benefits, etc.

I further demand that an outside independent certified public accountant be selected to audit all expenditures of the N.M.U.; and a Membership Watch Dog Committee be set up including outside impartial observers to see that members will be protected against the continuous misappropriation of Union Funds.

I demand that no monies be used out of the N.M.U. General Treasury for the Officers Staff Pension Plan. Further, I would consider any expenditure of Union Monies for the Officers Staff Pension Plans as both illegal and unethical; and I herewith, give notice that you and all the National Officers will be held personally liable for the repayment of these funds. The Court has provided ample precedent in the case; Morrisey Vs. Perry et. al.

If you do not reply within ten (10) days from the above date, I will immediately instruct my attorneys to proceed with the Law Suits in the Federal Courts.

    Sincerely,
    ANDY DINKO
    N.M.U. Book No. S–51380
    (Member in Good Standing)

3.  Section 501(b) provides:

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

union officials for alleged violations of section 501(a) only if

> the labor organization or its governing board or officers refuse or fail to sue or[4] recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so . . .

by the union member. Plaintiff argues that his letter of December 17, 1974, and the Union's inaction thereafter, met this requirement. Judge Werker held that the letter was an insufficient request because:

> Nowhere in the letter of December 17 does the plaintiff request that the officers of the NMU initiate court action to achieve the demands made by him [plaintiff].

The question of what constitutes a sufficient request under section 501(b) has not been litigated frequently in this circuit. In *Coleman v. Brotherhood of Railway, etc.*, 340 F.2d 206 (1965), we affirmed the dismissal of a claim against union officials under the Act because plaintiff there had made no demand to the union at all. The case is therefore not on point except for the emphasis in the opinion that:

> [T]his [request] provision of the statute is mandatory and . . . its requirements cannot be met by anything short of an actual request. An allegation of the futility of such a request will not suffice. Together with the further requirement of a showing of good cause and of securing court permission to proceed, the provision requiring a request is clearly designed to protect union officials from unjust harassment. If it is to serve

the purpose for which it was included, it must be given full effect.

340 F.2d at 208.

A few years later, the issue was raised more directly. In *Cassidy v. Horan*, 405 F.2d 230 (1968), we held, with one judge dissenting, that a letter demanding that union officers return certain sums of money and advising that otherwise "further steps which the Act permits will be taken" did not satisfy the statutory requirement of demand to sue. Then Chief Judge Lumbard characterized the majority opinion as "unduly technical" on this issue, asserting that "[t]he only question" was whether there had been "the kind of request" required by section 501(b) and that a demand to bring suit "was implicit" in the letter.[5] 405 F.2d at 233.

There are no other cases in this court explicitly dealing with the problem. In *Head v. Brotherhood of Railway, etc.*, 512 F.2d 398 (1975), *Coleman* and *Cassidy* were referred to approvingly in a footnote, id. at 398–99 n. 1, but there was no demand to sue construed in that case because it was decided on other grounds.[6] District court cases in this circuit are also sparse and have reached conflicting results.[7] In other circuits, the demand requirement has been regarded more casually. See, e. g., *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252–53 (3d Cir.), cert. denied, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); *Hood v. Journeyman Barbers*, 454 F.2d 1347, 1354 n. 23 (7th Cir. 1972). Indeed, we have found no decision of another circuit court holding a suit barred by the requirement.

■ We believe that Judge Werker erred in concluding that either *Coleman* or

---

4. The "or" has been unanimously construed to mean "to." E. g., *Cassidy v. Horan*, 405 F.2d 230, 232–33 (2d Cir. 1968); *Persico v. Daley*, 239 F.Supp. 629, 630–31 (S.D.N.Y.1965); *Penuelas v. Moreno*, 198 F.Supp. 441, 443 (S.D.Cal. 1961).

5. See Note, The Fiduciary Duty Under Section 501 of the LMRDA, 75 Colum.L.Rev. 1189, 1195 n. 29 (1975), criticizing the majority opinion.

6. Cf. also *Morrissey v. Curran*, 423 F.2d 393 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970), in which the sufficiency of plaintiffs' demand was not discussed.

7. Compare *Wimbush v. Curran*, 356 F.Supp. 316 (S.D.N.Y.1973), with *Levinson v. Perry*, 71 LRRM 2554 (S.D.N.Y.1969), and *Persico v. Daley*, supra note 4.

*Cassidy* controlled his ruling on this issue. Those decisions require compliance with the prerequisites mandated by the statute. The plaintiff here met those conditions. The letter, appropriately addressed to the Union, demanded "a complete accounting" and "a true and accurate accounting"; the statute can be satisfied by a request "to sue [to] recover damages *or secure an accounting* or other appropriate relief." (Emphasis added.) While this language has been construed to mean a demand for an accounting in a legal proceeding,[8] the words of plaintiff's letter, which echo those of the statute, should also be so construed.

■ We agree with the majority in *Coleman*, supra, 340 F.2d at 208, that the requirements of section 501(b) were designed "to protect union officials from unjust harassment." As will be seen in Part III of this opinion, we take that statutory purpose very seriously. However, the fiduciary responsibility created by the Act is designed to protect union members, who may be of limited education and are rarely represented by counsel when sending letters to their union. The interpretation of section 501(b) as a whole must reflect a balancing of important policies. Keeping these considerations in mind, we hold that plaintiff's demand for an "accounting" satisfied the request requirement of section 501(b).

### III  *Good Cause*

We turn now to the other basis of Judge Werker's decision. Section 501(b) also provides that "No such proceeding [to sue union officials] shall be brought except upon leave of the court obtained upon verified application and for good cause shown . . . ." The judge held that plaintiff had not made an adequate showing of good cause. When he so ruled, Judge Werker had before him a number of documents, including plaintiff's verified application for leave to sue, a lengthy affidavit of defendants' attorney, and plaintiff's deposition. Plaintiff's verified application contained a

variety of charges of wrongdoing, which can be roughly summarized as alleging an improper revision of the union's officers' pension plan, the withholding of certain financial and membership data from plaintiff and other union members, and the misappropriation of union funds. Defendants' affidavit answered each of plaintiff's many charges in detail and offered evidence that plaintiff's charges were, for the most part, based on unbelievable hearsay or his own credibility, which is, according to defendants, nonexistent.

Judge Werker did not discuss plaintiff's charges or defendants' response. Stating that he had the benefit of defendants' "detailed exhibits . . . particularly the deposition of the plaintiff," the judge merely held that plaintiff had not established "good cause," which he defined only as resting "in the sound discretion of the court." Plaintiff claims that the judge's ruling was both substantively wrong because good cause was established and also procedurally defective because the complaint should not have been dismissed "without a hearing or trial of the allegations."[9]

■ The latter contention is easily disposed of. Section 501(b) does not prescribe any procedure for a determination of good cause. The statute explicitly authorizes an ex parte determination, although it does not require it. See *Horner v. Ferron*, 362 F.2d 224, 228–29 (9th Cir.), cert. denied, 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966). There is support for the view that before finding good cause and allowing the action to proceed, the better course is to give union officials a chance to demonstrate that good cause is lacking. *Penuelas v. Moreno*, 198 F.Supp. 441, 449 (S.D.Cal.1961). The same procedural result is reached when, as in this case, the district court determines ex parte that there is good cause but then allows defendants to move, in effect, to vacate that order.[10] See, e. g., *Levinson v. Perry*, 71 LRRM 2554 (S.D.N.Y.1969);

8. E. g., *Penuelas v. Moreno*, supra note 4.

9. Brief for Plaintiff-Appellant, 13.

10. That two different judges were involved here seems to us irrelevant.

*Schonfeld v. Rarback*, 61 LRRM 2043 (S.D.N.Y.1965). We approve of that practice as a practical means of protecting union officials against vexatious and harassing suits, the obvious policy behind this portion of section 501(b). See *Horner v. Ferron*, supra, 362 F.2d at 228. In this case, contrary to plaintiff's contention, Judge Werker did hold a hearing although no evidence was taken. In that respect, the judge did not err; to determine good cause no more was required, certainly not—as plaintiff argues—a trial.

Plaintiff's claim that good cause was shown is more troubling. Ordinarily, one needs no permission to litigate under a federal statute. The requirement that plaintiff obtain leave of court upon good cause shown in order to proceed with his lawsuit is an unusual one. Unfortunately, the legislative history is unilluminating as to the content of the requirement. As a result, the courts have been left to wrestle inconclusively with the problem of defining good cause. It has been observed that Congress must have intended more than that a union member has requested the union to sue and the union has failed to do so, *Penuelas v. Moreno*, supra, 198 F.Supp. at 444, and the proposition seems reasonable. But beyond that, the reported cases have for the most part not devoted much discussion to defining good cause in this context.

One obvious meaning of good cause could be whether the union member's application for leave to sue states a good cause of action on its face. District courts, familiar with this notion in the context of motions to dismiss, have instinctively embraced it as a minimum basis for good cause. See, e. g., *Wimbush v. Curran*, 356 F.Supp. 316, 318 (S.D.N.Y.1973) ("proposed complaint alleges colorable claims"); *Schonfeld v. Rarback*, supra, 61 LRRM at 2043 (papers "state a claim upon which relief may be granted"). Both of these decisions, however, also emphasized the facts set forth in the moving papers. See *Wimbush*, supra, 356 F.Supp. at 318 (complaint supported by affidavits alleging "facts which would provide good cause for litigation"); *Schonfeld*, 61 LRRM

at 2044 ("a wealth of facts and acts which plainly support" the charge).

The most extensive treatment of good cause is found in *Horner v. Ferron*, supra, although the excellent discussion there focuses mainly on the procedural aspects of determining the issue. The court did observe, however, that at a contested hearing, if there is one, the district judge may "look somewhat beyond the complaint." 362 F.2d at 229.

> Thus if the defendant can establish, by undisputed affidavit, facts which demonstrate that the plaintiff is not a member of the defendant union, or that the action is outlawed by a statute of limitations, or that the action cannot succeed because of the application of the principles of *res judicata* or collateral estoppel, or that plaintiff has not complied with some controlling condition precedent to the bringing of such a suit, then although these defects do not appear on the face of the complaint, they may warrant denial of the application.
>
> However, we think it inappropriate to consider, at such a hearing, defenses which require the resolution of complex questions of law going to the substance of the case. Defenses of this kind should be appraised only on motion for summary judgment or after a trial. Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure, are *a fortiori*, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed. Defenses involving disputed questions of fact should be appraised only after a trial at which the parties and the court can have the benefit of a complete inquiry, assisted by such pre-trial discovery as may be undertaken. [Footnotes omitted.]

*Id.* This discussion clearly comes down on the side of looking to more than the complaint, but how much further is hard to say. We agree that the district judge is not limited to the face of the complaint, if he chooses to go beyond it, as Judge Werker

did here in relying on "the numerous detailed exhibits" offered by defendants.[11] But this does not advance analysis as far as is necessary. If an "undisputed affidavit," in the *Horner v. Ferron* phrase, establishes a fundamental legal defect in the action, we agree that good cause is not shown. But if the material facts are in dispute, the problem is more complex. We agree with the point made in *Horner* that since a genuine dispute as to a material fact would bar summary judgment, a fortiori such a dispute is "beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed." Id. The factual showing to institute a suit should be no more demanding than that required to defend it against a motion for summary judgment; indeed, it should be somewhat less, since at the earlier stage a plaintiff has not yet had a chance for discovery and a defendant will still have the later protection of a summary judgment motion.

It has been suggested that good cause in this context should mean that the plaintiff has made a showing of probable cause, with the latter defined as "a reasonable ground for belief in the existence of facts warranting the proceedings complained of." See Clark, The Fiduciary Duties of Union Officials Under Section 501 of the LMRDA, 52 Minn.L.Rev. 437, 466 (1967). The suggestion finds support in an excerpt from the legislative history of the section.[12] Moreover, we have used an analogous concept when plaintiff union members in a section 501 suit move to prevent defendant union officials from using counsel ordinarily employed by the union. In an early case under the Act, we suggested that the test for that relief should be

whether the plaintiff has made a reasonable showing that he is likely to succeed, and whether the conduct of the defendants is in conflict with the interests of the Union.

See *Holdeman v. Sheldon*, 311 F.2d 2, 3 (1962) (per curiam); *Tucker v. Shaw*, supra, 378 F.2d at 306–07. "Good cause" is an elastic concept, and is often used as a shorthand summary of the underlying policy reasons why a litigant should be able to attain a specified result.[13] Here, two policies compete: supervision of union officials in the exercise of their fiduciary obligations and protection, through a preliminary screening mechanism, of the internal operation of unions against unjustified interference or harassment. We believe that both these policies are served if good cause in section 501(b) is construed to mean that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence.

Returning now to the case before us, we do not know what standard of good cause Judge Werker applied. We do not fault him for this; the practice has apparently been to determine good cause in a conclusory manner, without any findings or detailed discussion.[14] While findings of fact and conclusions of law are not required in the technical sense, it would be most helpful in a case like this to have a fuller explanation of the bases of the district court decision. Cf. *Horner v. Ferron*, supra, 362 F.2d at 229 n.7. After all, whatever a judge does in this situation has serious implications. Denying leave to sue is usually the end of the lawsuit for plaintiff, and

11. In *Tucker v. Shaw*, 378 F.2d 304 (2d Cir. 1967), neither we nor the district judge, 269 F.Supp. 924 (E.D.N.Y.1966), looked beyond the "detailed factual verified application," which was considered ex parte, in finding good cause.

12. Senator Javits, one of the sponsors of the Kennedy-Ervin bill in the Senate, from which the good cause concept was apparently taken, stated:

> If the member is given leave to sue—in other words, if he shows *some probable cause*—he may sue. . . . [Emphasis added.]
>
> .

105 Cong.Rec. 6529 (1959).

13. E. g., the good cause requirement of Fed.R. Civ.P. 35. See *Schlagenhauf v. Holder*, 379 U.S. 104, 117–22, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

14. E. g., *Wimbush v. Curran*, supra note 7; *Schonfeld v. Rarback*, 61 LRRM 2043 (S.D.N.Y. 1965).

allowing the suit to proceed is, under this statute, also a grave decision. There are numerous allegations in the complaint to which defendants offered a number of varying responses. How the district judge assessed each should be made clear. For example, plaintiff has made a number of factual charges which defendants characterize as "wild" and completely unsubstantiated, and give their reasons for so asserting. If the district judge concluded that plaintiff did not have a reasonable ground for belief in the existence of the facts upon which these allegations are based, it would be helpful if that conclusion and the reasons for it were stated. Similarly, if the claimed defect in publishing the terms of the revised pension plan was on its face legally untenable, the judge should make that basis of his opinion clear.

Accordingly, we remand for further proceedings consistent with this opinion. Costs to abide the event.