EMPLOYING PLASTERERS' ASSOCIATION OF CHICAGO, Plaintiff,

v.

JOURNEYMEN PLASTERERS' PROTECTIVE & BENEVOLENT SOCIETY OF CHICAGO, LOCAL NO. 5, et al., Defendants.

No. 59 C 779.

United States District Court
N. D. Illinois, E. D.
June 6, 1960.

Henry E. Seyfarth, and Matthew E. Murray, Chicago, Ill., for plaintiff.

Thomas M. Thomas, Chicago, Ill., for defendant, Chicago Plastering Institute.

William T. Kirby, Chicago, Ill., for defendant, Local 5.

CAMPBELL, Chief Judge.

The emergency motion of plaintiff for preliminary injunction is brought to enjoin alleged violations by defendants and other plastering contractors of Section 302 of the Labor Management Relations Act of 1947, 29 United States Code Annotated, § 186.

Originally, when this cause was before me, (See, please, my memorandum entitled "Weir v. Chicago Plastering Institute, Inc., D.C., 177 F.Supp. 688) I held that the jurisdiction of Section 302(e) does not extend to an employer action for injunction, accounting and receivership, as in the case of Employing Plasterers' Association, or to an employer action to dissolve a corporation as in the case of Weir.

Upon appeal, the United States Court of Appeals rendered an opinion "limited to holding that the district court has jurisdiction under Section 302(e) to entertain an action to test the legality of employee welfare funds and to enjoin violations of Section 302 at the instance of the Association on behalf of its employer—contributor members" (the opinion is numbered 12813 of the September, 1959 Term, Seventh Circuit Court of Appeals). Subsequently, defendants filed a motion in the Court of Appeals to extend time to file a petition for rehearing which motion was granted extending said time until June 9, 1960.

I should note for the record that today is June 6, 1960.

On May 31, 1960, collective bargaining agreements entered into on June 1, 1955, between Local No. 5 and several groups of plastering contractors expired.

On May 31, 1960, members of Local 5 voted not to work without a contract and since May 31, 1960, have not worked for members of plaintiff Association, who have not signed new agreements with Local No. 5. Presently, approximately 146 plastering contractors out of the approximately 180 plastering contractors within the jurisdiction of Local No. 5, have signed new agreements with Local No. 5 substantially similar to defendants' Exhibit A, herein. Plaintiff Association, according to the records of Local No. 5, is composed of approximately 29 active contractors and employs approximately 375 journeymen plasterers out of approximately 1,400 active journeymen plasterers within the jurisdiction of Local No. 5. Plaintiff estimates, however, that its members employ over fifty per cent of such journeymen plasterers.

On May 31, 1960, plaintiff moved before the Court of Appeals for an emergency temporary restraining order to restrain all contributions by all employers within the jurisdiction of Local No. 5 according to their respective collective bargaining agreements, or, in the alternative, to restrain Local No. 5 from demanding and the Institute from receiving any contributions by all employers within the jurisdiction of Local No. 5, or in the alternative, to restrain Local No. 5 from demanding and the Institute from receiving any contributions from plaintiff and to further restrain them from demanding the execution of such agreements providing for such payments.

The emergency motion of plaintiff, which has since been amended to a motion for preliminary injunction, having been ordered to this Court for "consideration and prompt disposition" is presently before me for disposition after full hearing and consideration of all evidence, arguments and briefs of the parties. I have also taken into consideration, and for that purpose have reviewed, the lengthy record in this protracted litigation.

It is plaintiff's position that the contributions contemplated by Article VI of the new agreement, here in question, (Defendants' Exhibit A), signed by the majority of plastering contractors, though not by plaintiff members, within the jurisdiction of Local No. 5 are in violation of Section 302 and that therefore, the contributions should be restrained as to agreements already signed and that the execution by other contractors of the said agreement should likewise be restrained.

Article VI provides:

" (a) Each Contractor shall contribute and pay the sum of 14 cents per hour for each hour worked by Journeymen Plasterers, and 12 cents per hour for each hour worked by Apprentices and Superannuated Plasterers based on the first 40 hours of every week to a health and welfare fund for the purchase of life, medical and hospital insurance, and such other benefits as the trustees of such fund shall deem wise and practical. The Contractor and the Union shall enter into a declaration of trust and thereby shall appoint trustees to administer the health and welfare fund in accordance with Section 302 of the Taft-Hartley Act, as amended.

"The books and records of the Chicago Plastering Institute shall be audited and an accounting made by the Institute to the trustees of the health and welfare fund and the Institute shall pay over to such trustees that amount which the audit indicates are funds previously earmarked for health and welfare benefits.

" (b) The Contractor shall continue to pay and contribute the sum of 7 cents per hour for each hour worked by a Journeyman Plasterer, and 5 cents per hour for each hour worked by apprentices and superannuated plasterers based on the

first 40 hours of every work week to the Chicago Plastering Institute, a body corporate, organized under the laws of the State of Illinois.

"(1) For the purpose of educating the public of the superiority of plaster construction over inferior and other substitutes.

"(2) To further scientific development and study of plaster construction in order to foster and develop the use of plaster.

"(3) To promote by advertisement or other media the use of plaster in the construction and maintenance field instead of substitutes, inferior or otherwise.

"(c) The Contractor shall contribute the sum of six cents per hour for each hour worked by Journeymen Plasterers, and five cents per hour for each hour worked by Apprentices and Superannuated Plasterers, based on the first forty hours of every week, and these amounts shall be contributed and paid to the trustees of the existing pension and retirement fund for the payment of retirement benefits to Journeymen Plasterers, Apprentices, and Superannuated Plasterers. The Contractor shall deduct the sum of six cents per hour for each hour worked by the Apprentices and Superannuated Plasterers, based on the first forty hours of every work week from wages and shall pay the sum into existing pension and retirement fund for such employees."

As to the pension trust, it is evident that it is not under attack in this litigation (See transcript, pages 66, 67, 106), nor has there been any question as to its legality in the prior litigation. I, therefore, find no illegality with regard to the pension trust.

As to the health and welfare fund contemplated by Article VI, of the new agreement, it is primarily plaintiff's contention that it violates Section 302(c) (5) (B) in that it does not spell out in detail specific employee benefits and that it is Union dominated. (See the transcript of this hearing pages 50 to 52, 93, 94 and 108).

 I think it patently clear, and the Court of Appeals has also so found, that the provision in Section 302(c) (5) (B), "the detailed basis on which such payments are to be made is specified in a written agreement with the employer * * *," pertains to contributions by employers to the welfare fund, which condition is clearly satisfied by Article VI (a) of the new agreement and does not pertain, as plaintiff erroneously contends, to welfare and benefit payments to employees which, in the instant cause although not enumerated in the agreement itself, are spelled out in great detail by the declaration of trust referred to in Article VI (a) and set forth in the additional appendix to record, to be found in pages 1 to 30. As to the allegation of Union domination, I find no evidence, in either this or prior litigation, to substantiate this allegation.

I find that the health and welfare fund, as spelled out in the new agreement, does not violate Section 302 of the Taft-Hartley law.

I now consider the promotion fund contemplated by Article VI (b) of the new agreement.

Plaintiff argues that in this regard, the Institute is a "representative" of employees as contemplated by Section 302; that Section 302 is violated per se because there can be no Union representation on a promotional fund since the only time there can exist a joint administration according to Section 302 is where the fund is for the sole and exclusive benefit of the employees and their families; and that the amendments to the Articles of Incorporation and By-Laws of the Chicago Plastering Institute (Appendix pages 46 to 54) are invalid under Section 163a36 of the Illinois General Not for Profit Corporation Act, S.H.A. ch. 32, § 163a36, which provides that no amendment shall affect any existing cause of action, and are further invalid because they were "not submitted to membership."

I find that the Institute, as presently organized, administering the promotion fund separately, is not a "representative" of employees and that therefore, the provisions of Section 302 are not applicable. Plaintiff's position that Union representation on any joint board renders the board a "representative" of employees is, in my opinion, clearly erroneous.

In my original memorandum I explained in great detail, the Congressional purpose behind Section 302. I indicated that the term "representative" would necessarily have to vary in construction according to the purpose of the fund and the particular circumstances of each case. I indicated, as plaintiff has pointed out, that a broad construction of the term is both necessary and proper where *employee welfare fund* administration is concerned. However, here, under the new agreement, there is no question of the Institute administering a welfare fund as was the case *originally*. Here, the only fund in question is a *promotional* fund which is stated to be for the joint benefit of employer and Union. To adopt the theory of plaintiff would in effect destroy many present and future joint management—union cooperative efforts which theory, in my opinion, is expressly contrary to the Congressional history of Section 302 and the philosophy of the Taft-Hartley Act. It would be difficult to conceive of any joint board, even for social events, such as dances, picnics or the like, which would not violate Section 302 if the rigid construction here advanced by the plaintiff were to be given to the term "representative."

Though the present "Section 302" administration of the promotion fund found in Appendix 45 to 54 is not necessary since that Section is not applicable, in my opinion, to this fund, it is indeed worthy of note that this administrative procedure has, nevertheless, voluntarily been adopted. Insofar as the provisions of the Illinois General Not for Profit Corporation Act are concerned, I find that they do not invalidate the amendments to the Articles of Incorporation or the By-Laws of the Institute. I further feel that they do not in any way affect this motion. I further find no evidence in the record invalidating these amendments because they were, as alleged, "not submitted to membership."

I have had ample opportunity to study the administration of the trust funds here in question. They were before me during our many pre-trial conferences prior to our original litigation and were referred to in my memorandum. I find now, that under this new agreement, they are separately administered in complete accord with the letter and spirit of Section 302. I have also exhaustively studied the agreement itself (Defendants' Exhibit A) signed by the majority of the total number of the plastering contractors within the jurisdiction of Local No. 5 and I find no violation of Section 302.

Since I find no illegality as plaintiff alleges, the motion for preliminary injunction is denied.

A second ground also supports this ruling.

I find that the jurisdiction of Section 302(e) does not extend to an action by plaintiff representing approximately 29 active plastering contractors out of approximately 180 in number of contractors within the jurisdiction of Local No. 5 to enjoin the contributions and collective bargaining agreements of the other contractors. The broad jurisdictional scope of subsection (e) suggested by the plaintiff is almost limitless in its reach of injunctive relief contrary, in my opinion, to the purpose of subsection (e), and in apparent disregard of the obvious fact that Congress intended that the Department of Justice, and not private litigants, enforce public policy by virtue of Section 302, particularly where, as here, such private litigation could well affect an entire industry on a nationwide basis through action in a single District. The construction suggested by plaintiff could easily reduce the federal courts to a forum for management—union harassment and place a heavy club in the hands of management to use unjustly

for purposes of achieving an advantageous collective bargaining position.

A third and final ground, I feel, supports my ruling.

 Over a year ago, during our many pre-trial conferences, defendants offered to do equity and amend their collective bargaining agreements, the administration of the funds in question and the Institute Articles of Incorporation and By-Laws so as to comply with Section 302, as I would interpret it. Though the defendant, Local No. 5, began successful negotiations with other contractors to achieve this end, plaintiff refused all offers and persisted in its demands for accounting and receivership, as well as for unequal administrative control over the funds in question. (See Defendants' Exhibits 1 and 2.)

Although at one of the pre-trial conferences, the plaintiff did agree with my remark that if it ever did become necessary for me to appoint a Receiver for the Institute that I would direct him to employ an advertising agency and a bank to carry out the administration of the Institute, it is clear nevertheless, that plaintiff refused, in my opinion, to do equity and aid in the correction of the alleged defects existing formerly under the old contract in the administration of the funds then in question which, in my opinion, could have avoided these months of litigation and management—union difficulties. I, therefore, find that plaintiff is not a proper party for the extraordinary equitable relief it now requests.

Furthermore, though plaintiff protests the illegality of the administration of the funds in question under the new agreement, it has submitted similar proposals to defendants with regard to the health and welfare fund and promotion trust (See Defendants' Exhibits 1 and 2). In addition its proposals seem to me, after reading them carefully, to favor an unequal administrative control in the hands of the plaintiff. This action on the part of plaintiff demonstrates, in my opinion, a greater concern for an advantageous collective bargaining position rather than, as alleged, legal compliance with Section 302, and in my opinion, would bar this present action by plaintiff because of unclean hands.

The motion is accordingly denied.

The foregoing remarks shall, in accordance with the provisions of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., stand as my findings of fact and conclusions of law thereon.

It is so ordered.