Guido **GIORDANI**, Anthony Halpin, Alfredo Pizarro, Theodore G. Tibbatts, Martin Major, Saverio Ciulla and Raymond Garofalo, on behalf of the Upholsterers International Union, a labor organization, and also as representatives of the class of persons on whose behalf contributions are made to the UIU Health and Welfare Fund, a trust fund, and also as representatives of the class of persons on whose behalf contributions are made to the UIU National Pension Program, a trust fund

v.

**Sal B. HOFFMANN et al.**

Civ. A. No. 41768.

United States District Court
E. D. Pennsylvania.

Jan. 10, 1969.

See also D.C., 277 F.Supp. 722; D. C., 278 F.Supp. 886.

Edward B. Bergman, Philadelphia, Pa., for plaintiff.

Bruce W. Kauffman, Harold Kohn, David Pittinsky and Michael Brodie, Philadelphia, Pa., for defendants, U. I. U., U. I. U. Health and Welfare Fund, and National Pension Trust.

Frank Bielitsky, Philadelphia, Pa., for defendant, U. S. Fidelity and Guaranty Co.

Paul J. Donnelly, Philadelphia, Pa., for defendant, American Ins. Co.

## OPINION

MASTERSON, District Judge.

Plaintiffs, all members of Local 44 of the Upholsterers International Union, hereafter referred to as U.I.U., instituted this civil action on December 23, 1966. The plaintiffs alleged federal subject-matter jurisdiction of this action under §§ 301 and 302 of the Labor Management Relations Act, Title 29 U.S.C. §§ 185 and 186, and under § 501 of the Labor-Management Reporting and Disclosure Act, Title 29 U.S.C.A. § 501 (these statutes hereafter are referred to respectively as § 301, § 302, and § 501).[1] Because their action allegedly was based in part upon § 501 the plaintiffs applied to this Court for leave to sue pursuant to the requirement contained in that statute. On December 23, 1966, this application was granted and on December 4, 1967, the defendants' motions to vacate this order were denied. Presently before this Court are motions to dismiss, or in the alternative motions for a more definite statement, made by all the defendants.

In prosecuting this action the plaintiffs purport to be acting pursuant to Rule 23 of the Federal Rules of Civil Procedure by representing two classes of persons, i. e. the class of persons "* * on whose behalf contributions are made to the U.I.U. Health and Welfare Fund * * *" and the class of persons "* * * on whose behalf contributions are made to the U.I.U. National Pension Program." Both of these trust funds were established under the General Laws, or Constitution, of the U.I.U. to benefit employees whom it represents for purposes of collective bargaining.

Contributions to both funds are made by employers who have entered into collective bargaining contracts with the U.I.U.

In their original complaint the plaintiffs named all the individuals listed in the present caption above as individual defendants. They also named as defendants three organizations composed of groups of these individuals, i. e. the Board of Trustees of the Health and Welfare Fund, the General Executive Board of the U.I.U., and the Board of Governors of the National Pension Trust, hereafter referred to as the entity-defendants. Finally, they named as defendants the United States Fidelity and Guaranty Company and the American Insurance Company, which compa-

---

1. See Appendix for body of these statutes.

nies bonded the General Executive Board of the U.I.U. and the Trustees and Governors of the trust funds pursuant to the requirements contained respectively in Title 29 U.S.C.A. § 502 and Title 29 U.S.C.A. § 308(d). In this original complaint the plaintiffs purported to represent not only the two classes of beneficiaries of the trust funds, but also, in a derivative fashion, the U.I.U. itself.

On April 2, 1968, this Court conducted a hearing on motions to dismiss made by all the defendants noted above including the entity-defendants. At that time the plaintiffs made a motion to strike the entity-defendants from the case on the basis that "* * * none of the quoted entities * * * are defendants, or parties, to this civil action." With the agreement of the defendants, the Court. by order dated April 3, 1968, granted the plaintiffs' motion to strike and granted the plaintiffs twenty days within which to amend their complaint "* * taking out the parties and the reference to the parties as to whom the motion to strike has been granted * * *", (Transcript, April 2nd hearing, pp. 22–25). On April 15, 1968, the plaintiffs filed an amended complaint, the caption of which reflected the following changes from the original caption:

(1) deletion of the General Executive Board of the U.I.U., the Board of Governors of the Pension Trust, and the Board of Trustees of the Health and Welfare Fund as separate party-defendants;

(2) addition of the U.I.U. per se as a separate defendant; and

(3) inclusion of the Health and Welfare Fund and the National Pension Trust as separate defendants.

The plaintiffs' original complaint, and their amended complaint, both are extremely prolix, but it is clear that the defendants' actions which they challenge relate to the administration of the two trust funds established by the U.I.U. The plaintiffs have enumerated a large number of alleged improprieties by the defendants including, but not limited to:

(1) excessive and improper compensation arrangements for the trustees of the Health and Welfare Fund and for the governors of the National Pension Trust, particularly for the individual defendant Sal Hoffmann, who is also the President of the U.I.U. itself, including a practice by which the two trust funds make contributions to each other on behalf of these persons;

(2) improper employment practices by both trust funds, e. g. a practice of "nepotism" through which an unspecified number of Sal Hoffmann's relatives are alleged to have been employed;

(3) improper "self-dealings" between the trust funds and the U.I.U. in the form of "* * * leasing of facilities, loans and use of personal (sic) etc. * * *";

(4) improper composition of the Board of Governors of the Pension Trust and the Board of Trustees of the Health and Welfare Fund;

(5) improper employment practices by the Health and Welfare Fund in the employment of a number of "Social Security Stewards" who are employees of the U.I.U.;

(6) improper administration of the trust funds by the extension of the benefits of the funds to officers and employees of the U.I.U. itself; and

(7) improper administration of the trust funds by the establishment and maintenance of a convalescent and recreational center in Florida known as Salhaven.

After the plaintiffs filed their amended complaint the defendants renewed their motions to dismiss and a hearing was conducted on June 17, 1968. The large number and complexity of issues involved in these motions can be discussed best by reference to the respective defendants. For reasons discussed below, it is clear that all of the defendants were served properly and that there exists federal subject-matter jurisdiction over this action, at least under the provi-

sions of Title 29 U.S.C.A. § 186. Therefore, all of the defendants' motions to dismiss, which are based upon these jurisdictional contentions, are denied. The defendants' motions for a more definite statement are granted, however, and the plaintiffs are ordered to specify the complaints presently contained in ¶ 18 of their amended complaint. Finally, the defendants' motion to dismiss for failure to state a claim upon which relief can be granted, made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, is granted to the extent that one of the plaintiffs' claims is that the composition of the Board of Trustees of the Health and Welfare Fund violates the provisions of Title 29 U.S.C.A. § 186(c) (5) (B).

I

In support of their motion to dismiss the entity-defendants, i. e. the U.I.U., the Health and Welfare Fund, and the National Pension Trust, initially argue that the Court has no personal jurisdiction over them because there has been no valid service of process upon them.[2] Essentially they contend that the plaintiffs' attempt to serve them on April 25, 1968, pursuant to Rule 4(d) (7) of the Federal Rules of Civil Procedure and Rules 2157 and 2180 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, was unsuccessful. This is allegedly so because the person served, Richard S. Hoffmann, was neither " * * * an executive officer, or trustee", "* * * an agent or person for the time being in charge * * *", nor " * * * an agent, authorized by appointment to receive service of process * * *", of either of the trust funds, as required by Rule 2180, nor a "* * * person for the time being in charge of any place where such association regularly conducts any business * * *" of the U.I.U., as required by Rule 2157.

In support of this contention the entity-defendants have filed three affidavits of Mr. Hoffmann which allege, inter alia, that he was not "in charge" of the offices of the entity-defendants. Mr. Hoffmann acknowledges, however, that he did receive three copies of the plaintiffs' amended complaint at 1500 North Broad Street in Philadelphia where all three entity-defendants maintain their offices. See, Affidavit filed June 3, 1968. He admits also that at the time he was served with the complaint, and at all other times relevant to this case, he was resident-counsel for all three entity-defendants. See, ¶ 1 of Affidavit filed September 19, 1967, and ¶ 2 of Affidavit filed December 7, 1967. A consideration of these factors, and the only precedent directly on point, Goldlawr, Inc. v. Shubert, 169 F.Supp. 677, 679, 688–689 (E.D.Pa., 1958), rev'd on other grounds, 369 U.S. 463 (1962), compels a conclusion that service upon Mr. Hoffman was proper and that, therefore, there is personal jurisdiction here over these defendants.

In *Goldlawr*, supra, 169 F.Supp. at p. 689, the Court, under circumstances somewhat similar to those involved here, denied the foreign-defendants' motions to dismiss and held that there was personal jurisdiction over those defendants. The Marshal who had made service upon those defendants stated in his return of service that the person whom he had served was "in charge" of the offices of the defendants. Applying Pennsylvania law which considers a Marshal's return conclusive as to matters of fact, the Court held that his allegation compelled a conclusion that service of the foreign-defendants had been proper.

On the return of service here the United States Marshal states that on April 25, 1968, he left the Summons and Amended Complaint at the offices

---

**2.** As noted above, p. 3, the Court granted the plaintiffs' motion to strike from the case those defendants originally referred to as the "entity-defendants." These three new defendants are represented by the same counsel who represented the entity-defendants and they advance identical contentions in support of their motions to dismiss. Accordingly, they will be referred to hereafter as the entity-defendants for the sake of clarity.

of the U.I.U., 1500 North Broad Street, Philadelphia, with "\* \* \* Richard (sic) house counsel, who accepted service." Under *Goldlawr* this allegation itself is perhaps a sufficient basis for concluding that Hoffman was a person who properly could be served with process directed against the entity-defendants. Even if the Marshal's return is not considered controlling, however, it is clear that the facts recited in Mr. Hoffmann's affidavits, which are noted above, permit no conclusion here other than that he was "in charge" of the offices which the defendants maintained at 1500 North Broad Street.

A conclusion that the plaintiffs properly served these defendants is consistent with the relevant policy interest of insuring " \* \* \* that a defendant will receive actual knowledge of the commencement of the action against him." *Goldlawr*, supra, 169 F.Supp. at 689. There is no doubt that the plaintiffs adequately informed the entity-defendants of the commencement of this action, and that any technical errors allegedly committed in serving the complaint have not prejudiced them. Accordingly, the entity-defendants' motions to dismiss are denied to the extent that they are based upon the contention that there is no personal jurisdiction over them.

In support of their motion to dismiss the entity-defendants next have argued that this Court does not have subject-matter jurisdiction of this case because none of the three federal statutory provisions upon which the plaintiffs rely, i. e. §§ 301, 302, and 501, establish power in this Court to adjudicate the claims advanced by the plaintiffs. Because the Court has decided, for reasons discussed below, that subject-matter jurisdiction of this action exists here under Section 302 of the Labor Management Relations Act, it is unnecessary to decide the questions raised by the parties relating to the application of Section 301 and Section 501.

The entity-defendants have argued that the jurisdictional provision of Section 302, i. e. Section 302(e), must be construed narrowly as a provision intended only to implement a specific Congressional concern with preventing "pay-offs" and other improper financial arrangements between employers and representatives of employees. They contend that it is improper to interpret the statute as vesting the federal courts with jurisdiction to oversee the daily administration of trust funds established by parties to collective-bargaining contracts. Assuming arguendo that the Court does have the jurisdictional power under Section 302 to deal with certain of the plaintiff's allegations the defendants further contend that these allegations are legally defective and that the complaint should be dismissed pursuant to Rule 12(b) (6) for failure to state a claim upon which relief can be granted.

Initially, it is clear that all three of the entity-defendants are "representatives" of employees under Section 302(a) and thus are proper party-defendants to an action under this statute. See, Blassie v. Kroger, 345 F.2d 58, 67 (C.A.8, 1965). The more difficult question is whether the claims which the plaintiffs make concerning the administration of the trust funds and the improper use of trust fund property and money, are the types of claims Congress intended a Federal Court to deal with in an action based on Section 302.

Most of the courts dealing with this issue have held that a federal court does not have jurisdiction under Section 302 to "\* \* \* supervise and regulate internal administration \* \* \*" of trust funds established by parties to collective-bargaining contracts. Moyer v. Kirkpatrick, 265 F.Supp. 348, 351 (E.D. Pa., 1967), aff'd 3 Cir., 387 F.2d 955. See also, Employing Plasterers' Ass'n. of Chicago v. Journeymen, etc., 279 F.2d 92 (C.A.7, 1960); Moses, et al. v. Ammond, et al., 162 F.Supp. 866, 870 (S.D.N.Y., 1958) (there is "\* \* \* no Congressional mandate to the federal courts to fashion federal law for the administration of union welfare trusts \* \* \*"); Holton v. McFarland, 215 F.Supp. 372 (D.Alaska, 1963); Sanders v. Birth-

right, 172 F.Supp. 895 (S.D.Indiana, 1959); Kane v. Shulton, 189 F.Supp. 882 (D., N.J., 1960), and Bowers v. Ulpiano Casal, Inc., 393 F.2d 421 (C.A.1, 1968); to the contrary, see Copra v. Suro, 236 F.2d 107, 115 (C.A.1, 1956). In re Bricklayers' Local #1 of Pa. Welfare Fund, 159 F.Supp. 37 (E.D.Pa., 1958), Upholsterers International Union of North America v. Leathercraft Furniture Co., 82 F.Supp. 570, 574 (E.D. Pa., 1949), and Raymond et al. v. Hoffmann· et al., 284 F.Supp. 596, (E.D.Pa., 1966). The defendants rely most strongly upon *Bowers*, supra, both because this is the most recent holding on the issue, and because they contend that by referring negatively in *Bowers* to its own earlier decision in *Copra*, supra, the First Circuit Court of Appeals undercut the most significant precedent favoring plaintiffs' position.

■ It is clear that the general proposition advanced by the defendants, i. e. that a federal court does not have jurisdiction under § 302 to inquire into mere "violations of fiduciary obligations or standards of prudence in the administration of the trust fund * * *", *Bowers*, 393 F.2d at p. 424, is supported by a strong line of cases. This fact, however, does not compel a conclusion that the defendants' motions to dismiss must be granted, because the same cases which have denied the existence of broad federal supervisory jurisdiction over the administration of these funds simultaneously have affirmed the power of the federal courts to examine into what has been referred to as the structure of the trust funds. *Bowers*, Ibid., p. 424. Thus, it is undisputed that it is proper for a federal court to examine whether a trust fund, created by parties to a collective-bargaining contract, has been established in accordance with the conditions described in § 302(c) (5), e. g. that the basis on which the payments are to be made is specified in a written agreement, that there are provisions for an annual audit of the trust fund, that employees and employers are equally represented in the administration of the fund,

etc. Many of these decisions also have emphasized that a federal court properly may determine whether a trust fund has been established in accordance with the important prefatory condition in the statute that the fund must be "* * * for the sole and exclusive benefit of the employees of such employer * * *", See, *Bowers*, Ibid., p. 424.

■■ The basic premise of these decisions has been that § 302(e) establishes federal jurisdiction at least over cases charging that employers have made payments to representatives of employees which are proscribed by § 302(a) and (b). Among these proscribed payments are payments to trust funds which have not been established in accordance with the conditions of § 302(c) (5). Thus, if a plaintiff charges that employers have made direct payments to representatives of their employees under the guise of making contributions to trust funds it is clear that a federal court has jurisdiction over his complaint pursuant to § 302. It is only logical to conclude further that there is § 302 jurisdiction of a complaint which simply alleges that a trust fund, to which employers make certain contributions ostensibly on behalf of their employees, has not been established in accordance with § 302(c) (5), even though that complaint might not specifically allege that employers directly made proscribed payments. It is clear that the dangers arising from employers' pay-offs to representatives of employees exist in any case where a trust fund has not been established in compliance with § 302(c) (5), whether the alleged pay-offs have been made directly or indirectly. See, Employing Plasterers' Ass'n of Chicago v. Journeymen P. P. & B. Soc., 186 F.Supp. 91 (N.D.Ill., 1960), Blassie v. Kroger, supra, and generally, Thomas v. Reading Anthracite Co., 264 F.Supp. 339 (M.D.Pa., 1966).

■ Most of the plaintiffs' allegations here concern matters of fiduciary obligation involved in the daily internal administration of the U.I.U.'s two trust funds. Clearly, these matters them-

selves do not constitute a satisfactory federal jurisdictional basis and properly should be adjudicated in the state courts. The plaintiffs, however, have also advanced at least two "structural" contentions which do vest this Court with subject-matter jurisdiction under § 302:

(1) the allegation that there is not equal employer-employee representation among the trustees of either of the funds; and,

(2) the allegation that neither of the funds was established for the "sole and exclusive benefit" of the employees of the contributing employers.

In addition, the plaintiffs have described a pattern of dealings between the U.I.U. and the trust funds, particularly as reflected by the location of the offices of all three organizations in the same building in Philadelphia, which support their contention that the trust funds were not established for the "sole or exclusive benefit" of the employees. See generally, *American Bakeries v. Barrick*, 162 F. Supp. 882, 885 (N.D.Ohio, 1959), aff'd 6 Cir., 285 F.2d 426.

The defendants argue that the assumption of jurisdiction over this action will open the federal courts to a wave of litigation instituted by plaintiffs who, although their actual concerns are with matters of internal trust administration, will charge that a trust fund has not been established for the "sole and exclusive benefit" of the employee-beneficiaries simply for the purpose of gaining access to the federal courts. They contend that this problem can, and should, be avoided by limiting those "structural" allegations which would satisfactorily establish federal jurisdiction based upon § 302 to allegations of those violations expressly specified in § 302(c) (5) (B).

The language of the statute itself indicates, however, that the protection of § 302 specifically was to be extended to payments made only to those trust funds established for the "sole and exclusive benefit of the employees". In view of this express language an argument that the assumption of jurisdiction will induce a large number of potential litigants to institute actions here is an argument properly directed to a legislative rather than a judicial forum. The defendants in fact have referred to the legislative history of the statute to support their argument that Congress intended only to create a very limited jurisdictional power in the federal courts over trust-funds created by parties to a collective-bargaining contract. Although this history indicates that Congress's primary motive was to prevent extortion, this Court is persuaded that the legislative history is, at best, ambiguous, insofar as it refers to the jurisdictional concerns involved here. It is interesting that even those courts which have emphasized the importance of limiting the scope of federal court inquiry in cases such as this to matters amounting to "structural violations" have agreed that one of the significant structural conditions with which the funds must comply is that they be established for the sole and exclusive benefit of the employees. See, e. g. *Bowers*, supra, 393 F.2d at 424, f. n. 4.

■ Exercise of federal jurisdiction over a case such as the present one will not require a resolution of a plaintiff's allegations of breach of fiduciary responsibility in all future cases. Although a federal court will have the power to resolve these claims even in cases where the federal claims are insubstantial, in such cases the court will retain the discretion to decline jurisdiction and leave the plaintiff to his adequate remedies in the state courts. See, generally, *Gibbs v. United Mine Workers*, 383 U.S. 715, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966). By exercising federal jurisdiction over actions which allege that a trust fund has not been established for the "sole and exclusive benefit" of the employees this Court does not suggest that this phrase can be used as a shibboleth for gaining access to federal courts by plaintiffs whose paramount

concern is with matters of trust administration best left to the state courts.

 For all the reasons discussed above the Court will deny the entity-defendants' motions to dismiss insofar as they are based upon a contention that the Court does not have subject-matter jurisdiction of this claim.[3] The defendants' motion for a more definite statement will be granted, however, by requiring the plaintiffs to describe more precisely the allegedly improper dealings between the trust funds and the U.I.U. to which they vaguely refer in ¶ 18 of their present complaint.

 Conceding arguendo that the Court has subject-matter jurisdiction, the entity-defendants have made a Rule 12(b) (6) motion to dismiss aspects of the plaintiffs' complaint which they contend fail to state a claim upon which relief can be granted. In view of the unequivocal language of Section 302(g) exempting trust funds "* * * established by collective agreement prior to January 1, 1946 * * *" from certain of the requirements contained in Section 302(c) (5) (B), including the requirement of equal employer-employee representation in the administration of the fund, this Court will dismiss the complaint to the extent that it challenges the "unequal" representation among the trustees of the Health and Welfare Fund. See, *Upholsterers'*, supra, 82 F.Supp. at p. 574. There is support for dismissing other allegations in the complaint, such as those relating to the funds' employment of union-employees (see, Ware v. Adams, 47 Labor Cases ¶ 18, 297, (S.D.Calif., 1963)), and those attacking the funds' contributions to each other for the purpose of affording coverage to the individual defendants. See, U. S. Trucking Corp. v. Strong, 359 F.2d 392 (C.A. 2, 1966), and Blassie v. Kroger, supra, 345 F.2d at 58. These practices, however, are related inextricably to the claim that the trust funds were established for purposes other than the "sole and exclusive benefit of the employees", and any relief which the Court awards on the basis that the funds were improperly established inevitably would encompass these practices as well. Accordingly, except to the extent that the 12(b) (6) motion is directed to the plaintiffs' challenge of the composition of the Board of Trustees of the Health and Welfare Fund, the motion is denied without prejudice to the defendants' rights to renew it at some later time.

## II

The plaintiffs have named as defendants thirteen individuals, i. e. Sal B. Hoffmann, Alfred R. Rota, R. Alvin Albarino, Martin L. Garber, Paul W. Heaton, Al Gord, Hubert W. Bell, Victor T. Valin, Clarence Ewins, A. J. Becker, Ralph O. Campbell, H. J. Malerstein, Leon Henson and Grant C. Simmons, Jr., hereafter referred to collectively as the "individual defendants". These individual defendants constitute the governing bodies of the three entity-defendants, i. e. the General Executive Board of the U.I.U., the Board of Trustees of the Welfare Fund, and the Board of Governors of the Pension Trust. They have advanced a number of arguments in support of their motion to dismiss the plaintiffs' amended complaint. For reasons discussed below their motion to dismiss is denied.

---

3. The entity-defendants also argued that there was not § 302 jurisdiction of this action because 302(e)'s use of the word "restrain" authorizes a federal court to exercise jurisdiction only when affirmative relief can be granted to the plaintiff by enjoining the making of improper payments. See, e. g. Raymond v. Hoffman, supra, at p. 470, and Employing Plasterers', supra, 279 F.2d at 97. They contend that because the plaintiffs ask this Court to do things other than simply enjoin the making of improper payments this Court may not entertain this action. This argument is rejected both because it rests upon a strained interpretation of the word "restrain" and because it reflects an excessively timid approach to the remedial objects of this legislation.

Like the entity-defendants the individual defendants initially have argued that this Court has no personal jurisdiction over them because of the plaintiffs' alleged failure to serve them properly with the amended complaint. They concede that the plaintiffs attempted to serve them pursuant to Rule 4(d) (7) of the Federal Rules of Civil Procedure in the manner prescribed by the relevant state law, i. e. Pennsylvania Rule of Civil Procedure, 1009(b) (2) (iii), 12 P.S. Appendix, which authorizes service upon an individual defendant "* * * by handing a copy (of the complaint) * * at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." They insist, however, that service was improper for two reasons:

(1) the person upon whom the complaint was served on March 11, 1968, Richard Hoffmann, Esquire, was neither an agent of any of the defendants nor a person "in charge of" the office or usual place of employment of any of the defendants; and

(2) the place at which Mr. Hoffmann was served, i. e. 1500 North Broad Street in Philadelphia, Pennsylvania, is not an "* * * office or usual place of business * * *" of any of the individual defendants.

In support of their position the individual defendants have filed two affidavits of Mr. Hoffmann in which he avers that he never has been designated by any of the individual defendants as an agent authorized to accept service of process on their behalf and that he never has been in charge of the business offices located at 1500 North Broad Street. They argue further that there could be no personal jurisdiction here over any of the individual defendants except Hoffmann, Becker, and Albarino, because none of them reside in the Eastern District of Pennsylvania, nor have *any* offices or usual places of business here, nor conduct *any* business here. They contend that this conclusion is not altered by their affiliations with the three entity-defendants because these organizations conduct only infrequent business here: the General Executive Board of the U.I.U. and the Board of Trustees of the Welfare Fund each held only one of their quarterly meetings in 1966 in Philadelphia, and, at that time, at a location other than North Broad Street; and the Board of Governors of the Pension Program met only twice between 1965 and 1967 in Philadelphia, and, at those times, not at the offices at North Broad Street.

As discussed supra, p. 468, Mr. Hoffmann's affidavits establish that he is resident counsel for all three of the entity-defendants, and, since the individual defendants have been sued here in their capacity as members of these organizations, Hoffmann therefore must be considered as an agent authorized by them to accept service of this complaint. The Marshal's averment on the return of service that Mr. Hoffmann stated that " * * * he himself was in charge * * * " of the offices at 1500 North Broad Street further supports a conclusion that service was proper under Rule 1009(b) (2) (iii), as does the fact that service adequately informed each individual defendant of the plaintiffs' complaint and of his duty to defend.

The individual defendants have argued, however, that none of them maintains an individual "office or usual place of business" at 1500 North Broad Street and that therefore, even assuming that Hoffmann was in charge of these offices and that he could be considered to be their agent, there is no personal jurisdiction over them. They contend that the entity-defendants' maintenance of offices here is not a basis upon which the Court can extend its jurisdiction to them. See, Tarbox v. Walters, 192 F. Supp. 816 (E.D.Pa., 1961), Schoettle v. Sarkes-Tarzian, Inc., 167 F.Supp. 172 (E.D.Pa., 1958), and Calagaz v. Calhoon, 309 F.2d 248 (C.A. 5, 1962). All three cases are materially distinguishable from the present case.

In *Calagaz*, supra, several individual defendants who had no contact with the forum state other than their status as

officers of a corporate defendant which transacted business there challenged the court's personal jurisdiction over them. In granting their motions to dismiss the court relied heavily upon the fact that these defendants were involved only tenuously in the activities which the plaintiff challenged. In the present case, on the other hand, the plaintiffs have challenged specific actions of the individual defendants, and resolution of this action, unlike *Calagaz*, necessarily will require a detailed inquiry into the activities of the individual defendants.

*Schoettle*, supra, is more directly on point, involving Pennsylvania law and an attempt to extend personal jurisdiction to a non-resident officer of a foreign corporation by service upon an agent in charge of the corporation's Pennsylvania office. The holding in *Schoettle* which granted the motion to dismiss relied heavily, however, upon the fact that the foreign corporation maintained only a *branch office* here, whereas, according to the plaintiffs' undenied allegations in this case the entity-defendants all have their *principal* offices in Pennsylvania.

Finally, *Tarbox*, supra, is distinguishable because the individual defendant challenging personal jurisdiction there did not occupy any managerial position with the company at the office of which the complaint was served. The court held that it would be unfair to consider the office of his employer the defendant-employee's "place of business". All of the individual defendants in this case, however, occupy managerial positions with at least one of the entity-defendants. It is only reasonable to conclude that the principal office of any of the organizations of which an individual defendant is an officer is the "office", for purposes of serving process, of that individual defendant.

Two Pennsylvania cases support the conclusion that there exists personal jurisdiction here over these individual defendants, i. e. Wylie v. McKnight, 10 Beaver County Law Journal 145 (1945), and *Goldlawr*, supra. In *Wylie* the court

held that under Rule 1009(b) (2) (iii) an office of a corporation of which individual defendants are directors is " "* * an office or usual place of business' of those defendants, and (that) service at that office * * * (is) sufficient notice to them." The Court emphasized that "* * * it is entirely immaterial that these defendants may spend most of their time in other pursuits or businesses * * *" *Wylie*, supra, at p. 153. The Court in *Goldlawr*, supra, 169 F. Supp. at p. 689, similarly concluded that it was proper under Rule 1009(b) (2) (iii) to serve non-resident officers of a corporation at the usual place of business of that corporation.

If the entity-defendants have any principal offices these offices would be those which are maintained at 1500 North Broad Street in Philadelphia. Although each of the individual defendants avers that he has a "usual place of business" somewhere other than this location, insofar as they "engage in business" as members of these organizations, in which capacity they presently are sued, they do so at this address. To exercise jurisdiction over the entities but not over the individuals who compose the entities might render nugatory any affirmative relief which this Court ultimately might award the plaintiffs. Accordingly, the individual defendants' motions to dismiss are denied insofar as they are based upon their contentions that there was no valid service of process upon them.

In support of their motion to dismiss the individual defendants next have argued that venue of this action is laid improperly in this District. Assuming, as the defendants contend, that none of the statutory provisions upon which the plaintiffs base this action contains a special venue provision applicable to them as defendants, venue nonetheless is laid properly in this District pursuant to Title 28 U.S.C. § 1391(b). This statute, as amended on November 2, 1966, reads:

> "A civil action wherein jurisdiction is
> not founded solely on diversity of citi-

zenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law". All of the plaintiffs' claims relate to the administration of the two trust funds. Those trust funds maintain their principal offices in this District and the individual defendants who manage the funds at least occasionally hold their meetings here. Although certain of the specific transactions which the plaintiffs challenge occurred outside of this District, the Court believes that the plaintiffs' allegations generally satisfy the requirement of Title 28 U.S.C. § 1391(b) that the "claim arose" here, and thus that venue is proper here.

The individual defendants argue also that the plaintiffs' complaint must be dismissed because this Court does not have subject-matter jurisdiction over the plaintiffs' claims. In support of this contention they have relied totally upon the arguments made by the entity defendants, and, accordingly, their motion to dismiss is denied for the reasons discussed supra, pp. 469–471. Those individual defendants who are the employer-trustees of the Pension Funds have opposed subject-matter jurisdiction of this case also on the basis that they, unlike the employee-trustees, are not "representatives" of the employees and hence not proper defendants under §

302. Since all the trustees are charged equally with the responsibility of administering the trust funds, and since the beneficiaries are all employees, it is clear that each of the trustees, including the employer-trustees, is a "representative" of the employees suable under § 302.

Finally, the individual defendants have argued that the complaint should be dismissed because of the plaintiffs' failure to comply with the provisions of Rule 23 of the Federal Rules of Civil Procedure.[5] Pursuant to Rule 23 a complaint in a class action should contain the allegations summarized in Rule 23(a), i. e. that there exists a class, that the members of the class are so numerous as to make it impracticable to bring them all before the court, and that the claimants adequately represent the class. See, e. g. Hickey v. Illinois Central Railroad, 278 F.2d 529, 532 (C.A. 7, 1960), and Knapp v. Bankers Securities Corporation, 19 F.R.D. 515, 516 (E.D.Pa., 1956). As directed by Rule 23(c) (1) a court entertaining a class action then must determine whether the action satisfies the terms of Rule 23(b).

The plaintiffs concede that they have failed to allege various of the prerequisites listed in Rule 23(a), but they have argued that Rule 23 does not apply to Section 302 action. In their complaint, however, the plaintiffs have

---

5. Rule 23 reads, in pertinent part:

(a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class * * *

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications * * *

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *

(c) (1) as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained * * *.

averred that this action has been brought pursuant to Rule 23 on behalf of two classes of persons, i. e. the beneficiaries of the Health and Welfare Fund and the beneficiaries of the National Pension Program. Moreover, there is precedent which indicates that a Section 302 action typically is brought under rule 23. See, e. g. Holton v. McFarland, 215 F.Supp. 372, 376 (D.Alaska, 1963), and Booth v. Security Mutual Life Insurance Company, 155 F.Supp. 755, 759 (D.N.J., 1957). Certainly the substance of the plaintiffs' claim reflects the fact that the rights allegedly violated by the defendants are rights shared in common by all members of the two specified classes, and that any affirmative relief decreed by this Court would be accorded to the members of these classes and not merely to the individual plaintiffs. The conclusion, therefore, must be that this action is, at least in theory, a class action under Rule 23, and that this Court has an obligation pursuant to Rule 23(c) to determine whether it is to be so maintained.

 The defendants have cited limited authority supporting the dismissal of an action purportedly brought under Rule 23 when there has been a failure to specify in the complaint the conditions set forth in Rule 23(a). See, *Knapp*, supra, 19 F.R.D. at p. 516. In this case, however, although the plaintiffs have not specified precisely the Rule 23 conditions their complaint does indicate that the action satisfies at least conditions (1) through (3). Moreover, in their briefs opposing the motions to dismiss the plaintiffs also have alleged that they do " * * * fairly and adequately protect the interests of the class * * *", an assertion which the defendants have not contradicted. For all these reasons, and also because it is evident that this action falls within the category of class actions defined in Rule 23(b) (2), the defendants' motion to dismiss is denied to the extent that it is based upon their contentions challenging the authenticity of this suit as a class action.

## III

Finally, the plaintiffs have named as defendants both the United States Fidelity and Guaranty Company, hereafter referred to as Fidelity, and the American Insurance Company, hereafter referred to as American. American admits that, pursuant to the statutory requirement of Title 29 U.S.C.A. § 308d, it has bonded the individual defendants who are members of the Board of Trustees of the Health and Welfare Fund and that, pursuant to the statutory requirement of Title 29 U.S.C.A. § 502, it has bonded those individual defendants who are members of the Executive Board of U.I.U. Fidelity admits that it provided the bond required by these statutes until 1963 at which time it claims the bonds were terminated and its liability under the bonds absolved. Neither American nor Fidelity has admitted that it bonded those individual defendants who are only members of the Board of Governors of the National Pension Trust. Both companies have made motions to dismiss which are denied for reasons discussed below.

Like all the other defendants in this action, Fidelity and American have urged that there is no federal subject-matter jurisdiction of this action. Since this Court has concluded that generally subject-matter jurisdiction exists here under Title 29 U.S.C.A. § 186 the issue presented by these particular motions is whether this jurisdiction extends to the complaints directed against these two defendants.

 Neither party has cited, nor has this Court been able to find, any cases involving the extension of Section 302 jurisdiction to complaints directed against bonding companies such as Fidelity and American. In cases in which bonding companies are joined as party-defendants in actions brought pursuant to Section 502 of the Labor-Management Reporting and Disclosure Act, however, courts have denied their motions to dismiss for lack of subject-matter jurisdiction for reasons which are applicable to

the current situation. See, Robinson v. Weir, et al., 277 F.Supp. 581 (D.Neb., 1966), and Purcell v. Keane, 277 F.Supp. 252 (E.D.Pa., 1967). The reasoning supporting the denial of these motions was summarized in *Robinson*, supra, 277 F.Supp. at 582:

> "It is the conclusion of the Court that Congress intended that under § 501(b) a member should be entitled to sue for complete and appropriate relief, which would include not only suing the officer or representative but also the surety which has bonded that officer or representative. Any other determination would not effectuate the purpose of the Act and would require a multiplicity of suits in order to insure that the members would receive complete and appropriate relief and that they would be properly protected."

Similarly, it is clear that "complete and appropriate relief" can be provided to these plaintiffs suing under Section 302 only if the insurance companies bonding the individual defendants are held to be proper party-defendants to the action.

American and Fidelity have contended, however, that the language in Section 302(e) which directs federal courts to "restrain" acts proscribed by the statute indicates that there is federal jurisdiction pursuant to Section 302 only for the purpose of preventing possible abuses rather than for the purpose of remedying abuses which might have occurred in the past. See generally, *Employing Plasterers,* supra, 272 F.2d at p. 97. As discussed, supra, p. 472, footnote 3, this interpretation is inconsistent with both the plain meaning of the language used in the statute and with the purposes sought to be served by the statutory scheme. Moreover, if this interpretation were to be applied to these defendants it effectively would defeat the purpose of having the trustees bonded.

Fidelity and American have argued also that the plaintiffs may not sue them because they are not the insured parties named in the bonds and because they failed to comply with the provisions of the bonds which establish requirements with respect to notice of loss, proof of loss, and time within which an action on the bonds can be brought. Again, the reasoning employed by courts which have denied motions to dismiss made by bonding companies sued in actions brought pursuant to the Labor-Management Reporting and Disclosure Act supports a denial of the motions to dismiss made here by American and Fidelity. The Court in *Keane*, supra, 277 F.Supp. at p. 258, described well the inequities involved in barring plaintiffs from suing bonding companies because of such technicalities:

> "In the typical 501 situation the union through its officers will not act against its errant officers because either the officers empowered to act are the ones charged or are at least close associates. If it is preposterous to expect them to sue themselves, it follows that it is equally unlikely to expect them to sue on a surety bond on which they defaulted. As to notice to the surety company where it is apparent in a 501 situation, as it is under the circumstances involved here, that the individual members plaintiff had no actual knowledge of the provisions of the surety contract, they will not be charged with the duty of giving notice to the surety company in accordance with the provisions of the insurance policy."

Similar considerations have convinced this Court that it should not accept Fidelity's argument that the plaintiffs should be barred from recovery because of the provisions in the bond provided by Fidelity to the effect that "Loss is covered under this bond only if discovered not later than one year from the end of the Bond Period."

## ORDER

And now, this 10th day of January, 1969, it is hereby ordered that all motions to dismiss the above-captioned case made by the named individual defendants, and the defendants the Upholster-

ers' International Union of North America, the U.I.U. Health and Welfare Fund, the U.I.U. National Pension Trust, the United States Fidelity and Guaranty Company, and the American Surety Company, are denied.

It is further ordered that the motion to dismiss the complaint for failure to state a claim upon which relief can be granted, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by the entity defendants, is granted to the extent that the plaintiffs have challenged the composition of the Board of Trustees of the Health and Welfare Fund of the U.I.U., and, accordingly, this claim is dismissed from the above-captioned case. This Rule 12(b)(6) motion is denied without prejudice, however, to the extent that the motion challenges any other aspects of the plaintiffs' complaint.

It is finally ordered that the motion for a more definite statement, made by the entity defendants in the above-captioned case, is granted, and the plaintiffs are ordered to describe more precisely the alleged improper dealings between the trust funds and the U.I.U. to which they vaguely refer in ¶ 18 of their present complaint.

### APPENDIX

Section 301 reads:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Section 302 reads in pertinent part:

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—(1) to any representative of any of his employees who are employed in an industry affecting commerce.

(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): PROVIDED, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the

trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; or (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: PROVIDED, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds".

Section 501 reads:

"(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization."